[No. 12480.   Department Two. — December 20, 1889.]

WILLIAM S. JEWELL, RESPONDENT, *v.* CHARLES T. McKAY ET AL., APPELLANTS.

MECHANICS' AND LABORERS' LIENS — NOTICE OF LIEN — MISTAKE IN NAME OF EMPLOYER. — A mistake in the christian name of the employer, in the notice of lien, does not invalidate the notice, if it be alleged that the individual is the same person mentioned in the complaint, and is sometimes known by the name stated in the notice.

NOTICE OF LIEN — NATURE OF ALTERATIONS — SEPARATE JOB. — The notice of lien need not state the nature of the alterations, or whether each person performed a separate alteration.

NOTICE OF LIEN — KNOWLEDGE OF OWNER. — It is not necessary that the notice of lien should state that the owner of the land had knowledge of the work, etc. It is sufficient if such knowledge, etc., be alleged and found.

NOTICE OF LIEN — VALUE OF MATERIALS. — The notice of lien need not state the value of materials furnished.

NOTICE OF LIEN — ITEMIZED ACCOUNT. — The notice of lien need not give itemized accounts.

NOTICE OF LIEN — TERMS, TIME GIVEN, AND CONDITIONS OF THE CONTRACT — PERFORMANCE. — In stating the terms, time given, and conditions of the contract, the notice of lien may confine itself to what is expressly agreed, and need not state what is implied by law. Nor is it necessary to state facts showing the performance of the contract, or anything subsequent to or outside of the contract.

APPEAL from a judgment of the Superior Court of Humboldt County, and from an order refusing a new trial.

The facts are stated in the opinion.

*C. M. Wheeler*, and *J. A. McQuaid*, for Appellants.

*E. W. Wilson*, and *J. H. G. Weaver*, for Respondents.

HAYNE, C. — This was a suit to foreclose eleven mechanics' liens, which are set forth in separate counts of the complaint. The liens claimed were for labor and materials furnished to McKay & Harmon in the alteration and repair of a building owned by them. The ground upon which the building stood did not belong to McKay & Harmon, but belonged to one Ricks, whose interest was sought to be charged, on the theory that he had knowledge of the work, but did not give notice that he would not be responsible therefor, as required by section 1192 of the Code of Civil Procedure. The trial court gave judgment for the defendants upon the third, fourth, fifth, and tenth counts; and as the plaintiff has not appealed, these counts are not before us for consideration. Judgment upon the other counts was given for the plaintiff; and the defendants appeal therefrom, and from certain orders in relation to costs.

1. The appellants base objections upon the fact that the complaint alleges that the name of one of the employers was W. F. Harmon, while some of the notices of lien designate him as Fred Harmon, and some as Frank W. Harmon. The first count, however, has the following allegation: "That said defendant W. F. Harmon is the same person referred to in said verified claim as Fred Harmon, and that said defendant was usually known, designated, and called Fred Harmon." Each of the other counts has a similar allegation with reference to the name stated in the corresponding notice of lien. And the court found as follows in relation to it: "That the defendant W. F. Harmon is called and known sometimes as Fred Harmon, and at other times and by other persons as Frank Harmon; that is to say,

that he is called both by the name of Fred and Frank Harmon, and the evidence does not disclose of what particular christian name the letter 'F' preceding the name of Harmon is the initial." This finding is not attacked by the specifications. And under the circumstances, we think that the objections are not well taken.

2. It is contended that the demurrer for ambiguity, etc., should have been sustained; in the first place, because the complaint does not state the nature of the alterations or repairs made, and in the second place, because it does not appear from the complaint "whether each person performed a separate job or contributed to a separate alteration or repair, or whether all contributed to the same thing." We do not think there is any merit in these positions, and the other matters in this connection do not require special notice.

3. It is objected that some of the notices of lien do not state that the owner of the soil had personal or actual knowledge that the work was being done, and that the other notices contained no statement on the subject. But while the want of knowledge is to be alleged and proved in order to charge the interest of the owner of the soil (Code Civ. Proc., sec. 1192), it need not be stated in the notice of lien. What the notice must contain is prescribed by section 1187, which does not require the matter in question. The knowledge, etc., was alleged and established, which was all that was necessary.

4. It is contended that the notices do not give any items, and are not sufficiently particular in statement. In this regard the notices contain the following statements respectively:—

*Jewell* (in first count): That said Jewell "furnished materials to be and which were actually used," etc.; that said Harmon and McKay "entered into a contract with said William S. Jewell, under and by which said Jewell was to furnish the materials for the construction, alteration, and repair of said building, and the

following is a statement of the terms, time given, and conditions of said contract, to wit: That said William S. Jewell was to furnish said materials, and the same were to be paid for in cash, gold coin, upon the delivery thereof to said Charles T. McKay and Fred Harmon by said William S. Jewell; . . . . that the amount of the contract price for said materials furnished as aforesaid is $101.27 in United States gold coin."

*Wilds* (in second count): That said Wilds "performed certain work and labor in the construction, alteration," etc.; "that on the tenth day of October, A. D. 1886, said F. H. Wilds entered into a contract with said Frank W. Harmon and Charles T. McKay, whereby he was to work on said building, in making said alterations and repairs, for the sum of three dollars per day, payable when he quit work. The following is a statement of the terms, time given, and conditions on which said work and labor was performed, to wit: It was to be paid for in lawful money of the United States when he quit work on said building; . . . . that said F. H. Wilds commenced said work and labor on said alterations and repairs of said building on the eleventh day of October, A. D. 1886, and finished said work and labor on the sixth day of December, A. D. 1886, and on that day quit work; that said work and labor performed as aforesaid amounts to the sum of $104 in lawful money of the United States."

*Graham* (in sixth count): That said Graham "performed certain work and labor in the construction, alteration," etc.; "that said A. W. Graham, on the ninth day of October, A. D. 1886, entered into a contract with said Frank W. Harmon and Charles T. McKay, whereby said Graham was to work on said building in making said alterations and repairs; that the following is a statement of the terms, time given, and conditions upon which said work and labor was performed, to wit: The same was to be paid for in lawful money of the United States

when the work was completed; . . . . that said A. W. Graham commenced said work and labor on said building in making said alterations and repairs on the eleventh day of October, A. D. 1886, and finished work on the same on the seventeenth day of December, A. D. 1886, and on said day quit work thereon; that said work and labor performed amounts to the sum of $232."

*Appleby* (in seventh count): That said Appleby "performed certain work and labor in the construction, alteration, and repair," etc.; "that on the nineteenth day of October, A. D. 1886, said J. W. Appleby entered into a contract with said Frank W. Harmon and Charles T. McKay, whereby he was to work on said building, in making said alterations and repairs, for the sum of two dollars per day, payable when he quit work. There was no agreement as to the times of payment for said work and labor, but the same was to be paid for in lawful money of the United States on demand; . . . . that said John W. Appleby commenced said work and labor on said alterations and repairs on said building on the fifth day of October, A. D. 1886, and finished said work and labor on the seventeenth day of December, A. D. 1886, and said last-named day quit work; that said work and labor performed as aforesaid amounts to the sum of $132 lawful money of the United States."

*Moore & Olmstead* (in eighth count): That said Moore & Olmstead, "as tinsmiths and plumbers, performed certain work and labor upon that certain building or structure hereinafter described in the alteration, construction, and repair thereof, in tinning and plumbing the same, and furnished certain materials, consisting of pipe, tin," etc.; "the following is a statement of the terms, time given, and conditions of said contract, to wit: Said work and materials were to be paid for in lawful money of the United States on the completion of the construction, alteration, and repairs of said building or structure; . . . . that the amount of the contract price for said

work so done and materials so furnished as aforesaid is $306.83 in lawful money of the United States."

*Hulse* (in ninth count): That said Hulse "furnished certain materials, consisting of bolts and iron rods and plates, which were to be used," etc.; "the following is a statement of the terms, time given, and conditions upon which said materials as aforesaid were furnished, to wit: Such materials were to be paid for when said alterations and repairs on said building were completed and · finished, in lawful money of the United States; . . . . that said materials so furnished as aforesaid amount to the sum of $24.70."

*Hopkins* (in eleventh count): That said Hopkins "furnished certain materials, consisting of nails, rope, cords, pipe," etc.; "the following is a statement of the terms, time given, and conditions of said contract, to wit: The same were to be paid for in lawful money of the United States on delivery; . . . . that the amount of the contract price for said materials so furnished as aforesaid is $20.90 in lawful money of the United States."

Two objections are made to these notices in the respect mentioned, viz.:—

1. It is urged that the notices do not state *the value* of the labor or materials. This position is based partly upon the provision of section 1184 of the Code of Civil Procedure, as amended in 1885, to the effect that the persons entitled to liens *may* give to the owner a notice of their claims, stating, among other things, "the amount *in value*, as near as may be," etc., and that it shall thereupon be the duty of the owner to "withhold from his contractors" a sufficient sum to cover the claims so notified. This notice, however, is not the notice of lien which is to be recorded. It is merely a measure of extra precaution on the claimant's part, and it is optional with him whether to give it or not.

The position is further based upon section 1183, as

amended in 1885, which provides that certain designated persons shall have a lien "*for the value*" of labor done and materials furnished. In the first place, the phrase is not used in contradistinction from "price" or "agreed value." It cannot possibly have been the intention that a contractor, material-man, or laborer, who agrees for a certain sum, can have a lien for a greater sum upon the ground that the value of what he furnished is greater. It is probably true that where a subcontractor, material-man, or laborer agrees with the original contractor for more than he is entitled to, upon the understanding between them that it shall be made out of the property, there would be such a fraud as would vitiate the claim. But aside from such a case, we think that the word "value," in the above provision, is to be construed so as to mean "agreed value" in cases where there is an agreed value. In the second place, the provision of section 1183 merely defines the class who are entitled to liens. It does not purport to prescribe the contents of the notice to be recorded, which matter is regulated by section 1187.

2. It is argued that the notices do not give itemized accounts of the materials and labor for which liens are claimed. But we do not understand that this is necessary under the decisions of this state. The statute, as it stood in 1858, required that the notice should give "a just and true account *of the demand.*" (Wood's Digest, p. 537, sec. 2.) And under this provision it was held in *Brennan* v. *Swasey,* 16 Cal. 141, 76 Am. Dec. 507, that an itemized account was not necessary, the court, per Cope, J., saying: "It was unnecessary to set out the items of the account. Nothing more was required than a statement of the demand showing its nature and character and the amount due or owing thereon." (See also *Selden* v. *Meeks,* 17 Cal. 131; *Heston* v. *Martin,* 11 Cal. 41; *Davis* v. *Livingston,* 29 Cal. 283.)

The provision under which the present liens were

filed (Code Civ. Proc., sec. 1187, as amended in 1874) required that the notice should contain a statement " of his demand," " with a statement of the terms, time given, and conditions of his contract." The word " demand " was construed in *Brennan* v. *Swasey*, above quoted, and under that decision it must be held that that word does not mean an itemized account. Does the other clause, viz., " the terms, time given, and conditions," of the contract, require such an account?

There are many contracts which deal with details of quantity, time, value, etc. But even with regard to such contracts it seems questionable whether it is necessary for the notice of lien to set forth items. Even in a pleading " it is not necessary for a party to set forth the items of an account therein alleged." (Code Civ. Proc., sec. 454.) And we cannot think that the statements in a notice of lien are required to be made with greater fullness or formality than is necessary in a pleading. We are not prepared to say that as much fullness or formality is required. And it seems probable that even in the case of a contract which went into details of amount, etc., a general statement thereof would be sufficient in the notice of lien.

But it is not necessary to express a definite opinion upon this question; for it is obvious that there are many contracts which do not go into details of amount, time, value, etc. For example, a contractor may go to the owner of a lumber-yard and say: " I am building such and such a building. Will you let me have lumber for it as I need it, at ruling rates?" If this should be agreed to, and the lumber supplied, without anything further being said, it seems plain that an itemized account would not be involved in a statement of the " terms, time given, and conditions of the contract." So if a laborer should be employed at a fixed rate for an indefinite period, the number of days he worked would not be a part of the contract, and consequently would

not have to be stated in the notice. So if he should be employed without a fixed rate of compensation, such compensation could not be said to be a part of the " terms, time given, or conditions " of the contract. The code does not require the notice to state implications made by law. For example, if there was nothing but a request for labor or materials, and a silent compliance with it, we do not think that a statement of the implied promise to pay what the labor or materials were reasonably worth would be necessary. It seems to us that the statute requires only the agreement which is expressly made to be stated in the notice. This we understand to be the principle of the decision in *Hills* v. *Ohlig*, 63 Cal. 104, where it was held that "if no distinct time was agreed on, but the time of payment was left to the rule fixed by the law on such a state of facts," the " time given " need not be stated.

Nor do we think that it is necessary to state facts showing a performance of the contract, or other facts necessary to complete the cause of action. For example, in the cases above put, it would not be necessary to state that the labor or materials were in fact furnished as provided by the contract, or that they were reasonably worth the sum claimed. The statute does not require the notice to state anything subsequent to or outside of the contract.

Tested by the foregoing rules, we think that all the notices of lien were sufficient. The only notices about which there can be any question in this regard are those of Graham and Hulse. And with respect to these we think that the statement that " the following is a statement of *the* terms," etc., of the contract, must be taken to mean the *only* terms which were in fact agreed upon. And upon this construction the notices are sufficient.

The counsel fees were properly allowed, and we think were reasonable in amount.

We have noticed all the points of counsel which we

think require special notice. There may be other objections to the notices of lien; but we do not think it is incumbent on us to raise them.

We therefore advise that the judgment and orders appealed from be affirmed.

BELCHER, C. C., and VANCLIEF, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and orders appealed from are affirmed.