[Civ. No. 2433. Third Appellate District.—August 31, 1922.]

# B. U. HEBERLING et al., Respondents, v. D. B. DAY et al., Appellants.

[1] MECHANICS' LIENS—CONSTITUTIONAL REMEDY—PLEADING.—The mechanics' or materialman's lien is merely the remedy provided by the constitution for the enforcement of the payment of a debt which is incurred against the contractor or the owner of the property by reason of the performance of labor on or the furnishing of material used in the construction of work upon certain property by third parties, and the mere statement in the complaint to foreclose such a lien of two different sets of circumstances upon which that remedy may be invoked to secure a single relief does not involve the statement of two different causes of action.

[2] ID.—AMENDED CLAIM—RIGHT TO FILE.—A laborer or a materialman may file an amended claim of lien within the time within which an original claim may be filed.

[3] ID.—PLEADING—SEVERAL COUNTS—LACK OF PREJUDICE.—Where the facts constituting several causes of action are separately stated, except that the pleader omits to allege in the successive counts that certain formal allegations contained in the first count "are hereby expressly referred to herein, and made a part of this cause of action," the error, if any, of the trial court in overruling defendant's demurrer to the complaint on the ground that several causes of action are united and not separately stated is in nowise prejudicial to the defendants.

[4] ID.—TIME OF COMPLETION—FINDINGS.—In an action to foreclose a mechanic's lien, findings that the building was completed "on or before" a given date and that the owner, its representatives, and lessee entered into the use and occupation of said building on the first day of the preceding month, and that such entry, use, and occupation "on its part was the equivalent of the completion of said building within the meaning of section 1187 of the Code of Civil Procedure," are not inconsistent.

[5] ID.—DEDUCTION OF CREDITS—SUFFICIENCY OF AFFIDAVIT.—An affidavit attached to a notice of claim of lien declaring that said claim contains a correct statement of the claimant's demand "after deducting all just credits and offsets" sufficiently meets the requirement of section 187 of the Code of Civil Procedure in respect to the making of all just credits and offsets.

[6] ID.—ASSIGNMENT FOR SECURITY — RIGHT TO FILE LIEN.—Notwithstanding the assignment of his claim for the purpose of security, a

2. Right of amendment of statement or notice of mechanic's lien, note, **Ann. Cas.** 1915A, 60.

materialman still has sufficient interest in the claim to entitle him to thereafter file a notice of claim of lien.

[7] ID.—CORPORATE AFFIDAVIT—OMISSION OF SEAL.—The seal of a corporation performs no other or further function than to impart *prima facie* verity to the due execution of its written contracts or obligations; and where a claim of lien is verified by a duly authorized officer of a corporation and this fact appears in the affidavit attached to the claim, the absence of the corporate seal from the affidavit will not render the notice of claim of lien invalid.

[8] ID.—ERRONEOUS REFUSAL OF RECORDER TO FILE CLAIM — DATE OF RECORDATION.—Where a claim of lien by a corporation is upon its face in all respects in legal form, but the county recorder refuses to file it because of the absence of the corporate seal and returns the same to the corporation, notifying it of such refusal and the reason therefor, whereupon the corporation re-mails the claim to the county recorder with a request that he file it as of the date it was first received by him, such claim will be deemed to have been filed on the day it was first deposited with the county recorder.

[9] ID.—AMENDMENT OF CLAIM — ELECTION. — Where both the original and amended notices of claim of lien refer to the same indebtedness, and each is filed within due legal time after the completion of the building, in an action to foreclose the lien claimed it is not error to admit both such claims in evidence without requiring the plaintiff to make an election as between them.

[10] ID.—DEDUCTION OF CREDITS AND OFFSETS—ABSENCE OF RECITAL— SUFFICIENCY OF CLAIM.—In view of the provisions of section 1203 of the Code of Civil Procedure, where a notice of claim of lien recites that "there now remains due, owing and unpaid" from the contractor to the claimant a specified sum of money, and there are not credits or offsets which should have been deducted from the demand set forth therein, the failure of such claim to state that the amount of the demand is due "after deducting all just credits and offsets," as provided in section 1187 of the Code of Civil Procedure, will not have the effect of invalidating the claim or the act of recording it.

[11] ID. — PRESENCE OF MONEYS IN HANDS OF OWNER — PLEADING.— Where the prayer of a materialman's complaint against the owner and the contractor and his sureties asks that the owner be required to pay into court any moneys due and owing to the contractor, and there is no allegation in such complaint that the owner has in its possession or custody any moneys which are due the contractor under the contract, but the answer of said owner alleges that it has a certain balance in its hands and prays that its liability be limited to the amount of such fund, this is a sufficient allegation to show that there is a fund in the hands of said owner subject to be applied to the payment of the debts arising by reason of the performance of the contract by the contractor.

[12] ID.—ACTION AGAINST SURETIES — EXCESSIVE JUDGMENT.—In con-
  solidated actions by materialmen and laborers against the owner
  and the contractor and his sureties, where the joint and several
  judgment against the sureties, after crediting thereon the balance
  of the contract price remaining in the hands of the owner, is reduced
  to a sum less than the amount of the obligation of any one of the
  several sureties, the judgment against such sureties is not exces-
  sive.

APPEAL from a judgment of the Superior Court of
Tulare County. George L. Jones, Judge. Affirmed.

The facts are stated in the opinion of the court.

Robert T. Linney, Karl A. Machetanz and Lamberson &
Lamberson for Appellants.

Farnsworth, McClure & Burke, William Ellis Lady, Power
& McFadzean and Bradley & Bradley for Respondents.

HART, J.—The plaintiffs instituted actions in the supe-
rior court of Tulare County for the foreclosure of certain
liens for materials furnished for and labor performed on
the construction of a certain building in the city of Visalia,
and also for recovery of judgments against the sureties upon
the bond furnished by the contractor to the owner of the
building for the faithful performance of the terms of the
building contract to satisfy the several demands sued for.
By order of the court the actions were consolidated. (Sec.
1195, Code Civ. Proc.)

On the third day of May, 1917, one D. B. Day, a build-
ing contractor, and the Visalia Elks Building Association,
a corporation, entered into a written contract, by the terms
of which the said contractor agreed to construct for said
corporation, in the city of Visalia, and furnish therefor
all necessary labor and material, a three-story building and
basement, for the total sum of $53,287. Attached to the
contract were the plans and specifications, and for the faith-
ful performance of the terms of said contract, the said Day,
as principal, and the defendants, Ragle, Cole, J. P. Day,
and Blair, as sureties, executed and delivered to said Asso-
ciation a bond in the penal sum of $26,644, as follows:
Ragle, in the sum of $14,000; Blair, in the sum of $15,000;
Cole, in the sum of $14,000; Day, in the sum of $13,000.

The condition of said bond was that said Day would faithfully perform said contract in accordance with the plans and specifications annexed thereto, pay all claims of all persons performing labor upon or furnishing materials used, ''and to be used in said work,'' and to turn over said building to said association completed in conformity with the contract and plans and specifications, within the time limited in said contract, free and clear of all claims, demands, liens, etc. This bond, with the contract, was filed for record on the third day of May, 1917, in the office of the county recorder of Tulare County.

The complaint alleges that said building was completed and said contract between the Elks Building Association and said Day was fully performed on the twenty-first day of May, 1918, and that on the twenty-second day of May, 1918, said owner, Building Association, formally accepted said building, and caused to be prepared and to be filed in the office of the county recorder of Tulare County a notice of the completion of said building, which notice contained all the facts required to be set forth in such a notice and stated that the building had been completed on the twenty-first day of May, 1918. Then follows a statement in detail of the materials furnished and used in said building by plaintiff, Heberling, doing business as Visalia Planing Mill, and the statement that on the twenty-seventh day of April, 1918, said Heberling, etc., filed for record in the office of the county recorder of Tulare County a claim of lien duly verified by his oath for the purpose of securing and perfecting a lien for the amounts due him for the materials furnished as alleged; that thereafter, and within thirty days from the date of the actual completion of said building, and for the purpose of curing certain defects in said lien, and for the further purpose of securing and perfecting his lien for the amount due him as explained, said Heberling, etc., filed for record in the office of the county recorder of the county of Tulare, on the fourth day of June, 1918, an amended claim of lien duly verified by his oath.

The claim of the plaintiff, Clark, doing business as Visalia Plumbing and Sheet Metal Company, is next set out in the complaint with particularity, it being based upon a subcontract between said Clark, etc., and the contractor,

Day, for the furnishing of the necessary labor and materials, etc., for the installation of the plumbing, heating, ventilating, and vacuum cleaning system of the building and also for the sheet metal work. In this paragraph of the complaint it is alleged that the owner of the building and its representatives and lessee entered into the use and occupation of said building on or shortly after the first day of April, 1918, and further alleged that said building was completed within the meaning of section 1187 of the Code of Civil Procedure by reason of such entering into the use and occupation of said building. It is alleged that on the twenty-ninth day of April, 1918, said Clark, etc., filed in the office of the county recorder of Tulare County his claim of lien duly verified for the materials so furnished and the labor so performed. It is then alleged that within thirty days from the date of the actual completion "of said building, to wit, on the twenty-first day of May, 1918, said Clark for the purpose of curing certain defects in the lien theretofore filed, filed for record in the office of the county recorder . . . an amended claim of lien duly certified," etc.

The claim of each of the other plaintiffs is set out in the complaint in the usual form and as to each it is alleged that a claim of lien was properly prepared and filed within due time. As to the claim of the First National Bank of Visalia it is alleged that one J. B. Murphy, having under a subcontract performed all the cement work and the lathing and plastering in said building required by the plans and specifications for the same and filed his claim of lien for the balance due for said work in the sum of $2,524.32, subsequent to the filing of said claim of lien, sold and delivered said lien and the debt to secure which it was filed to the said bank.

The prayer is for a judgment against the contractor as principal and Ragle, Cole, Blair, and John P. Day, as sureties on the faithful performance bond in favor of each of the plaintiffs in the several amounts due them and for which claims of lien were filed; that the said Building Association be required to pay into court any money due and owing from it to the said contractor, and that said amount, whatever it may be, be apportioned *pro rata* among the various lien claimants and plaintiffs herein, etc.

The defendants demurred to each of the several counts of the complaint on general and special grounds, but the only point urged on the demurrer is that the complaint, in so far as are concerned the two several counts in which the Heberling and Clark claims are set out, is faulty in that therein there are two causes of action improperly joined and not separately stated. This point will later be considered.

The demurrer to each of the counts having been overruled, the defendant, D. B. Day, answered the complaint and each of the several counts setting up the claims of the plaintiffs as lien claimants, and the sureties on the faithful performance bond likewise answered the complaint.

The answers of the Elks Building Association to the complaint and each of the several counts thereof are not in the transcript, having been inadvertently omitted therefrom. They have, however, been certified to this court on a suggestion of a diminution of the record, and it is ordered that they be made and that they now do constitute and are a part of the record on this appeal. These answers are in all particulars substantially alike, and therein it is, among other things, alleged (after averments as to the making of the contract between D. B. Day and the Association, as already explained, the execution and delivery to it of a faithful performance bond by said Day, in an amount not less than fifty per cent of the contract price of said building, and the due recordation of said contract and bond), that said Association made progress payments on said contract as required thereby, and retained for thirty-five days and still retains, of the contract price, the sum of $13,321.25, which sum is twenty-five per cent of said price. Then, after allegations concerning the work of installing and putting in place upon one end and side of the building an "Anton Lateral Arm Awning" by one E. C. Glunz under a contract with said contractor Day, said awning being called for by the contract between said Day and said Association, and the payment by the latter to said Glunz of the sum of $717.75 for the materials and work required for that purpose, each of said answers proceeds:

"Alleges that it is and would be just and equitable to restrict the recovery under the liens filed against said building and property to the amount of Thirteen Thousand

Three Hundred Twenty-one and Twenty-five One-hundredths ($13,321.25) Dollars, less the said sum of Seven Hundred Seventeen and Seventy-five One-hundredths ($717.75) Dollars to be paid said Glunz as aforesaid, and that judgment be rendered against said contractor and the sureties on his said Bond for any deficiency or difference that may remain between said amount due to said contractor, less said Seven Hundred Seventeen and Seventy-five One-hundredths ($717.75) Dollars, and the whole amount found to be due to lien claimants for labor and materials furnished by them for use in and used in said building, in the construction thereof.''

The answers referred to further allege that the Building Association is ready, able, and willing to pay into court, subject to any order made by the court with reference thereto, said sum of $13,321.25, minus the said sum of $717.75 so paid to said Glunz. It is then stated in said answers that certain persons (naming them) had filed claims of lien against the building and had brought suits to foreclose the same; that the contractor, Day, disputed the demands for which said liens were filed, claiming that there were certain offsets existing in his favor and against said demands for which he had not been credited, for which reason, so said answers aver, an accounting was necessary and should be had to the end that it may be ascertained and determined what the true amounts due to the several lien claimants are. The said answers pray that the Building Association be allowed to pay the said "hold-back" fund into court for the use and benefit of the lien claimants, in accordance with their several rights, as determined and adjudged by the court.

It is not essential to this decision to refer in detail or even recapitulate in substance the findings. It will be sufficient to consider, as will hereinafter be done, the findings which are attacked on one ground or another. We may, at this point, state that, as to the claim of E. C. Glunz, referred to in the answers of the Building Association, as above indicated, the court found that after the same was filed the said Glunz sold, assigned, and delivered the claim, together with the lien filed to secure the same, to the Building Association in consideration of the payment to said claimant by said Association the full amount of said claim,

and that said Association has ever since and now is entitled to participate in the hold-back fund "now in its hands to the extent of its proportionate part of such fund," etc.

The judgment decrees that the contractor and his bondsmen are liable for the several sums adjudged to be due the lien claimants; that the Visalia Elks Building Association has in its possession the sum of $13,066.45 for distribution among the plaintiffs; that the plaintiffs have liens upon the property and the building of the Association amounting in the aggregate to the said last-mentioned sum; that each of the plaintiffs has a lien upon said building for that proportion of the amount adjudged to be due him which bears the same ratio to the total amount due him that the sum of $13,066.45 bears to the total of all the amounts adjudged to be due to the plaintiffs. It directs the Building Association to deposit in court said sum of $13,066.45 within ten days from the entry of the judgment and orders the clerk forthwith to distribute that amount *pro rata* among the plaintiffs, and further provides that on the payment of said sum to the clerk the building and property of the Building Association shall be released and discharged from the plaintiffs' liens. It is further decreed that in the event of the failure of the Building Association to comply with the requirement of the judgment as to paying into court the "hold-back fund" or the said sum of $13,066.45, within ten days from the date of the entry of the judgment, the real property of the Association described in the pleadings shall be sold in accordance with the usual practice with reference to mortgage foreclosure sales, and that in the event that said property be sold for more than enough to satisfy said claims of lien to the extent and in the amount of said last-mentioned sum of money, together with the costs of sale, the surplus shall be paid over to said Association. It is further decreed that the relief awarded to said plaintiffs and specified in paragraph one of the judgment to the effect that the builder and his bondsmen are liable for the several sums adjudged to be due the lien claimants, etc., "is entirely separate and distinct from, and independent of, the relief which said plaintiffs are entitled to have by participating in said sum now in the hands of said Association and to be paid into court as hereinbefore provided, or, in the event that it is not so paid into court, as herein-

before provided, of foreclosing and selling said property, but nothing in this judgment contained shall be construed as awarding said plaintiffs, or any of them, or entitling them, or any of them, to more than one recovery hereunder.''

It was stipulated by counsel for the appellants that the Elks Building Association ''did pay into the Superior Court of the County of Tulare, State of California, within the time limited in said action, said sum of $13,066.45, which was the twenty-five per cent of the contract price, held back by said Association.'' This stipulation does not appear in the printed record on appeal, but is here on suggestion of a diminution of the record, and it is ordered that the same be made a part of the record on this appeal. The points urged by the appellants are quite numerous and involve objections to the complaint in certain particulars and also the claim that certain findings are not supported and that others are inconsistent with each other. An examination of these points has readily convinced us that there is no substantial merit to any of them and they, therefore, deserve and will receive but limited consideration herein. The objection to the complaint is directed against the counts setting forth, respectively, the claims of Heberling and Clark and is based upon the ground that two different causes of action are improperly united and not separately stated in each of said counts. In the Heberling count it is alleged, as will be noted, that on the twenty-seventh day of April, 1918, said Heberling filed a lien upon the property of the Building Association upon the hypothesis that there had been a statutory completion of the building (by occupation and use) on the first day of April, 1918, as alleged in the complaint, and it is also alleged in another paragraph of·said count that the contract was fully performed on the twenty-first day of May, 1918, that the Building Association formally accepted said building on the twenty-second day of May, 1918, and that Heberling, for the purpose of curing certain defects in the lien so filed, filed a claim of lien on the fourth day of June, 1918. Similar allegations are contained in the Clark count. The argument is that these allegations involve the statement of, and improperly join, without separately stating them, two different causes of action, and that the demurrer of the ap-

pellants to both counts should have been sustained on that ground. It is perfectly clear that both claims of lien relate to a single indebtedness and that one cause of action only is stated in each of said counts. The contention of the appellants involves a confusion of the relief asked and the remedy whereby it is sought to secure such relief. [1] The lien is merely the remedy provided by the constitution for the enforcement of the payment of a debt which is incurred against the contractor or the owner of the property by reason of the performance of labor on or the furnishing of materials used in the construction of work upon certain property by third parties, and, obviously, the mere statement in the complaint of two different sets of circumstances upon which that remedy may be invoked to secure a single relief does not involve the statement of two different causes of action. [2] But, in this connection, it is further contended by appellants that there is no authority in law for the amendment of a claim of lien. While express authority is not to be found therefor in the code, no sound reason against the right to file an amended lien within the thirty days within which an original lien may be filed is apparent. It must be borne in mind at all times that the right of laborers, mechanics, and materialmen to liens for the enforcement of their demands for labor bestowed upon and materials furnished for and used in buildings or other structures comes directly from the constitution, and that the rule now is, if justly it were ever otherwise, that the procedure adopted by the legislature for invoking that right must be liberally viewed and construed. The contention of appellants as to the right to file an amended claim of lien within the time for filing the original claim is, in principle, determined adversely to said contention in *Schwarz & Gottlieb, Inc.* v. *Marcuse*, 175 Cal. 401 [165 Pac. 1015].

[3] As to the Murphy claim (assigned to the plaintiff, First National Bank, etc.), it is contended that several causes of action are improperly united and not separately stated, to wit: 1. An action on a contract to furnish certain material; 2. An action for the reasonable value of extra work and material. Conceding, for the argument, that these causes of action should have been separately stated, and that the court erred in overruling the demurrer, such error

was in nowise prejudicial to appellants. The facts constituting these several causes of action are separately stated, except that the pleader omitted to allege, as in the various other counts, ''that the allegations contained in paragraph 1 to 5, both inclusive, are hereby expressly referred to herein, and made a part of this cause of action.'' Said allegations 1 to 5 are to the effect that the plaintiffs were partnerships or corporations as the case may be and that the Visalia Elks Building Association was a corporation; that the association was the owner of the lot on which the building was erected and caused the building to be constructed; the execution of the contract for the erection of the building; the execution of the faithful performance bond, and the completion of the building. It thus appears that the defendants were fully informed of every fact upon which plaintiffs relied for a recovery. The particular extra work and material, and the reasonable value of each thereof, constituting the several causes of action contained in the single count are fully stated. The case is not like that of *Bowman* v. *Wohlke,* 166 Cal. 121 [135 Pac. 37], where the amended complaint alleged a series of acts, constituting separate causes of action, in one count and then alleged damages in the lump sum of $10,000. The court said (166 Cal. 127 [135 Pac. 37]): ''The complaint in all but two or three instances, where certain items of special injury were alleged, failed to set forth the amount of damages claimed on account of each cause of action. So much, at least, the defendants were entitled to know.''

[4]   The findings which it is claimed are inconsistent with each other are numbers 11 and 12. The asserted inconsistency is in the fact that finding 11 declares that the building was actually completed ''on or before'' the twenty-first day of May, 1918, while finding 12 states that the Building Association, its representatives and lessee, entered into the use and occupation of said building on the 1st of April, 1918, and that such entry, use and occupation ''on its part was the equivalent of the completion of said building within the meaning of section 1187 of the Code of Civil Procedure.'' These findings follow the language of section 1187 of the Code of Civil Procedure, and if they are inconsistent, so are the provisions of said section. It is manifest, though, that said section is not inconsistent merely

because it provides that certain acts by the owner or of those engaged in constructing the building or structure shall, for the purpose of filing liens, be deemed the equivalent of completion; and findings that there have been a deemed completion and also an actual completion of the same building merely mean that there were two different starting points from which the time within which claims of lien may be filed began to run and that lien claimants were at liberty to file their claims with respect to either starting point. It is clear that there can be no inconsistency between findings so declaring. In this connection, it is to be said that there is no foundation for the claim that there is no evidence to support finding 12 to the effect that the Building Association entered into the use of the building between April 1 and April 27, 1918. The defendant (contractor) Day himself testified (Trans., p. 482) that, while he could not fix the exact date the Elks Lodge moved into the building, he did know that it was during the month of April; that he attended a lodge meeting in the month of April. He further stated (Trans., p. 483): "The Elks Lodge accepted the building in the month of April. I attended a meeting of the Lodge at that time."

It is insisted that the finding that plaintiff Spalding Lumber Co. agreed to and did furnish material to the value of $8,885.41 is not supported. The witness Hughes, secretary of said plaintiff, gave a full and complete statement of the materials furnished for and used in the building and testified that the total reasonable value of the materials so furnished and used was the sum of $8,885.41, of which the sum of $5,864.88 had been paid, leaving an unpaid balance of $3,020.53. (Trans., pp. 378, 379.) This testimony, of course, affords full support for the finding. Hughes testified that said plaintiff agreed to and did so furnish said materials, and this answers the objection that there is a fatal variance between the allegations and proof as to this claim in that it is alleged that the materials were furnished under contract, whereas the proof shows that they were furnished on estimates. But the validity of the Spalding claim of lien is challenged on the further ground that "the notice of lien fails to state that all just credits and offsets have been made." [5] The affidavit of Secretary Hughes attached to the notice of claim declares that said claim "con-

tains a correct statement of said claimant's demand after deducting all just credits and offsets.'' This certainly sufficiently meets the requirement in that respect of section 1187 of the Code of Civil Procedure.

It is claimed that there is no evidence to support the finding that the plaintiff Visalia Water Company furnished water to the contractor for the purposes of the construction of the building to the value of $29.48. We have not been required to examine the record to ascertain whether there was evidence, by way of the testimony of witnesses, introduced in support of said claim for the reason that the answer of the contractor Day and that of the sureties admit that water to the value of $30 was so furnished.

The finding (19) as to the Murphy claim for extras in the sum of $250.50 is attacked for want of evidence to support it, but the attack is groundless. Contractor Day approved and accepted the itemized bill for extras furnished by Murphy, the total amount thereof being the sum of $250.50. [6] It is also contended that Murphy's lien is invalid because prior to filing the same he assigned his claim to the plaintiff Bank. The president of plaintiff Bank testified that Murphy assigned the claim as collateral security for a loan made to him by said Bank. This testimony is corroborated by the fact that Murphy executed and delivered to the Bank his note for said loan. Therefore, even if Murphy assigned the claim to the Bank prior to the date of the filing of his claim of lien, he still had sufficient interest in the claim to entitle him to file a lien. (18 R. C. L., p. 561.) The reference to the testimony as to this assignment is a sufficient reply to the contention that the finding that said assignment was made is without evidentiary support.

The claim that there is no evidence to sustain finding 22 that the plaintiff Pacific St. Elec. Co. filed its claim of lien on June 20, 1918, is, in our opinion, without substantial merit. The objection grows out of the fact that the corporate seal of the said plaintiff (a corporation) was not affixed to the notice of claim of lien, the county recorder refusing to file the claim on that ground and returning the same to said corporation and notifying it of such refusal and the reason therefor. Upon receipt of said claim, said plaintiff re-mailed the same to the recorder and requested

him to file the said claim as of the date the same was first received by said recorder. The specific contention is that the claim was not filed in contemplation of law until the day the claim was received back by the recorder. The recorder testified that the claim of lien was delivered to his office on June 20, 1918. **[7]** The claim was verified by a duly authorized officer of the corporation and this fact appeared in the affidavit attached to the claim. We do not think the absence of the plaintiff's corporate seal from the affidavit rendered the notice of claim of lien invalid. The rule is not now, as formerly, that a corporation cannot "express its will, or enter into a contract, except through an instrument under seal." (Thompson on Corporations, 2d ed., sec. 1920.) The modern rule seems to be that the seal of a corporation performs no other or further function than to impart *prima facie* verity to the due execution of its written contracts or obligations, and that the execution of contracts by corporations may be shown by parol. (*Commercial S. Co.* v. *Modesto Drug Co.*, 43 Cal. App. 162, 178 [184 Pac. 964].) **[8]** Under section 1170 of the Civil Code, the claim of lien being duly acknowledged by an officer of the corporation authorized to verify and cause it to be filed, was deemed to be filed on the day (nineteenth day of June, 1918) when said officer deposited it with the county recorder, and, we may add, that, since the claim was upon its face in all respects in legal form, it did not rest with the recorder to question the sufficiency of the form thereof and so refuse to record it. But, at all events, under section 1197 of the Code of Civil Procedure, the said plaintiff has a right of personal action against the contractor, and, on the authority of *General Electric Co.* v. *Baltimore Bonding Co.*, 180 Cal. 675 [182 Pac. 444], said plaintiff was entitled to proceed in a direct personal action on the faithful performance bond.

The objection that the finding as to the Glunz claim, heretofore referred to, is not authorized by the evidence cannot be sustained. On pages 460 and 467 of the transcript will be found testimony by Glunz, to the effect that he agreed with the contractor to and did put up an awning on the building for the price of $717.75, and that that sum represented the reasonable value of said awning and the labor performed upon it.

[9]   There is no legal force to the proposition main-
tained by appellants that Heberling and Clark should have
been put to an election as between the original and amended
claims filed by them, respectively, and that it was error to
admit the claims without requiring such election.   Both the
original and amended notices of claim of lien in each in-
stance, as already pointed out, related to the same indebted-
ness, and it was, therefore, not material which of the two
was relied on, it appearing that each was filed within due
legal time after the completion, statutory or actual, of
the building.

[10]   It is urged that the notice of claim of lien of the
plaintiff Pioneer Brick Co. was defective because it failed
to state that the amount of the demand therein set forth
was due *"after deducting all just credits and offsets,"* the
italicized words having been omitted from the notice.   The
notice states that "there now remains due, owing, and
unpaid from said D. B. Day to this claimant the sum
of $636.35."  Section 1187, *supra,* provides that a lien
claimant "must file for record . . . a claim of lien con-
taining a statement of his demand after deducting all just
credits and offsets."   Assuming that that language means
that the claim must contain the statement that there are
"no just credits or offsets" against the claim where there
is none, the omission of a statement to that effect in the
notice of claim of lien cannot have the effect of invalidating
the claim or the act of recording it, since section 1203 of
the Code of Civil Procedure expressly declares that errors
or mistakes in the statement of the demand or of the amount
of credits, etc., shall not have that effect.   It is not claimed
that there were any credits or offsets which should have been
deducted from the demand set forth in said claim.

[11]   It is contended that, while the prayer of the Heber-
ling et al. complaint asks that the Building Association be
required to pay into court any money due and owing from
it to the contractor, D. B. Day, yet there is no allegation in
said pleading that said Association had in its possession
or custody any moneys which were due the contractor under
the contract.   It is true that the complaint contains no
allegations as to the so-called "hold-back" fund, but, as be-
fore shown, the answers of the Building Association allege
that it has a balance (twenty-five per cent of the contract

price) in its hands and prays that the liability of said Association (the owner) be limited to the amount of such fund. This was, of course, sufficient to show that there was a fund in the hands of the owner subject to be applied to the payment of the debts arising by reason of the performance of the contract by the contractor.

There have now been considered such of the points affecting the remedy by lien invoked herein as it has been conceived merited special attention, and, as must be obvious from the discussion, those points are wholly devoid of force. If, however, it were necessary to concede that any of the points so urged are well taken, the plaintiffs, as before suggested, have their right to a direct action against the contractor and his sureties on the faithful performance bond; and they have, as seen, exercised that right in this case. It follows that, even if any of the claims of liens or all of them were for any reason invalid, the plaintiffs, and each of them, are fully protected by the judgment against the sureties on said bond. [12] And in this connection, we may consider the contention of the appellants that the judgment against the sureties is excessive. The aggregate amount of the judgment is $23,000. The defendant sureties obligated themselves in the sum of $14,000, $14,000, $15,000, and $13,000, respectively. The judgment is joint and several. The judgment directs the owner to, pay the sum of $13,321.25 into court to be applied *pro rata* on the judgment. As seen, a stipulation is on file herein to the effect that the Visalia Elks Building Association did pay said sum into court and that on the stipulation of the parties it was paid to the various claimants. It thus appears that by such payments the judgment has been reduced to about $10,000, or $3,000 less than the amount of the obligation of any surety. Under such circumstances the appellants cannot complain.

The judgment is affirmed.

Burnett, J., and Finch, P. J., concurred.