[Civ. No. 424.   Fourth Appellate District.—November 1, 1932.]

DONALD G. INGERSOLL et al., Respondents, v. SIDNEY
CHAPLIN et al., Appellants.

Loyd Wright and Charles E. Millikan for Appellants.

No appearance for Respondents.

MARKS, J.—This is an action to foreclose separate mechanics' liens upon property situated in the town of Encinitas in San Diego County. Judgment was rendered in favor of the plaintiffs, and the defendants, Sidney Chaplin, Minnie Chaplin and Lallie de Loriere are here on appeal.

The liens state that Sidney Chaplin was the owner and reputed owner of the premises upon which the liens were claimed. The complaint alleges, and the court found, that Sidney Chaplin and Minnie Chaplin, as husband and wife, were the owners of the property. This creates no sufficient variance affecting the validity of the judgment. (17 Cal. Jur. 132, sec. 86, and cases cited.) In *Ah Louis* v. *Harwood*, 140 Cal. 500 [74 Pac. 41, 43], it was said: "If in good faith the claimant states the name of a reputed owner, 'he shall not lose his lien if he shall afterward ascertain that some other person was the owner.' (*Corbett* v. *Chambers*, 109 Cal. 178 [41 Pac. 873].) It was also there said: 'The object of this statement in his claim is, as we have seen, to designate the person against whom he seeks to establish the lien, as well as to protect others in their dealing with the property. The purpose of this designation is to point out the individual who is to be affected thereby rather than the attribute of ownership.' "

The liens further state that Sidney Chaplin made the contracts either personally or through agents. The complaint alleges, and the court found, that the contracts were made by Sidney Chaplin and Minnie Chaplin. Appellants urge that this constitutes a variance fatal to the judgment. The case comes before us on the judgment-roll. We may assume that the evidence showed that while Sidney Chaplin in person actually made the contracts in question, he did so for himself and for Minnie Chaplin as her agent. This contention of appellants is answered in the case of *Hammond Lumber Co.* v. *Richardson*, 94 Cal. App. 119 [270 Pac. 751], where it was said: "Appellant has four specifications of error, but they are all in effect stated in the

first specification, which is as follows: 'Claim of lien is insufficient in that it did not truly state the name of the person to whom plaintiff furnished the materials and because there was a fatal variance between the notice of lien and the proof.' Section 1187 of the Code of Civil Procedure requires, among other things, that a lien claimant must in his claim of lien designate therein the name of the person by whom he was employed or to whom he furnished the materials. The purpose of the claim of lien, as contemplated in the Mechanic's Lien Law, in so far as it concerns the owner of the property against which the lien is claimed, is to give him constructive notice of the claimed lien; to inform him as·to the nature and extent of the claim, and to facilitate investigation as to its merits. (*Trout* v. *Siegel,* 202 Cal. 706 [262 Pac. 320]; *Wagner* v. *Hansen,* 103 Cal. 104 [37 Pac. 195].)

"The right of mechanics and materialmen to liens upon property upon which they have bestowed labor or furnished materials is constitutional (Cal. Const., art. XX, sec. 15). It is the function of the legislature to provide procedure for carrying this right into effect, and the statutes relating thereto are to be liberally construed with a view to effect their objects and promote justice. (*McClung* v. *Paradise Gold Min. Co.,* 164 Cal. 517 [129 Pac. 774]; *Hammond Lumber Co.* v. *Barth Inv. Corp.,* 202 Cal. 601, 606 [262 Pac. 29, 31]; *Hebering* v. *Day,* 59 Cal. App. 13, 22 [209 Pac. 908].)

"There is nothing in the evidence in the present case to show that the owner was misled to his injury in any way by failure of the claimant to state precisely the name of the corporation with which the contract was made, and to which the materials were furnished. It will not be presumed, in the absence of evidence to that effect, that he was so misled. (*Ross* v. *Putnam,* 46 Mo. 337.) Indeed, it is obvious that he was not misled, and the trial court so found. A general statement of this phase of the Mechanic's Lien Law is given in Corpus Juris (vol. 40, pp. 235, 236) as follows: 'As a rule a mistake in the statement as to the name of the person with whom plaintiff contracted or by whom he was employed . . . will not defeat the lien, where there was no intention to deceive and no one has been misled to his detriment.' (*First Presbyterian Church* v. *Santy,* 52 Kan. 462 [34 Pac. 974]; *H. F. Cady Lumber Co.* v. *Conkling,* 70 Neb.

807 [98 N. W. 42]; *Eberle* v. *Drennan,* 40 Okl. 59 [136 Pac. 162]; *Osborn* v. *Logus,* 28 Or. 302 [37 Pac. 456, 38 Pac. 190, and 42 Pac. 997, 51 L. R. A. (N. S.) 68].) Our own state courts have followed the general rule. (*Tibbetts* v. *Moore,* 23 Cal. 208; *Jewell* v. *McKay,* 82 Cal. 144 [23 Pac. 139]; *Hazard, Gould & Co.* v. *Rosenberg,* 177 Cal. 295 [170 Pac. 612].)

"In *Osborn* v. *Logus, supra,* the contract for construction was executed by the defendant Logus, owner of certain property, with C. N. Holmes & Company. The claim of lien stated that the materials were furnished to 'J. W. Holm & Brother'. It was alleged in the complaint that the materials were furnished to J. O. Holm and C. N. Holm, partners, doing business under the firm name of J. O. Holm & Brother. After referring to certain of the evidence, the court said: 'But however this may all be it is clearly apparent that the defendant Logus, who alone is contesting this appeal, has not been misled to his injury in any respect by the allegations in the complaint touching these parties or their firm name, and we are, therefore, not inclined to hold that there is such a disagreement between the proofs and the allegations as to constitute a variance fatal to plaintiff's case.' "

The Lumber and Builders Supply Company had two contracts and filed two liens. Appellants urge that the record shows that one of these liens was prematurely filed. That lien was recorded on November 11, 1924. The trial court found that The Lumber and Builders Supply Company furnished materials and supplies between September 8 and November 17, 1924. November 11, 1924, is between those dates, and, in the absence of evidence to the contrary, we cannot assume that any of the supplies and materials were furnished after November 10, 1924.

It is next urged that the findings do not support a personal deficiency judgment against Sidney Chaplin or Minnie Chaplin in favor of James F. Ground and The Lumber and Builders Supply Company for the amounts remaining unpaid after the sale of the premises.

The trial court found that "the defendants, Sidney Chaplin and Minnie Chaplin, through their duly authorized agents, made and entered into a contract with and employed the plaintiff James F. Ground to furnish the labor and mate-

rials'', etc. The trial court made the same finding as to one of the contracts with The Lumber and Builders Supply Company as it did in the instance of the James F. Ground contract. As to the other, it found that Sidney Chaplin and Minnie Chaplin purchased the lumber, building materials, and supplies directly from The Lumber and Builders Supply Company. Under this state of the record the deficiency judgment as rendered was proper. (*Ridens* v. *Economy Home Builders, Inc.*, 104 Cal. App. 677 [286 Pac. 481].)

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.