[Civ. No. 28266. First Dist., Div. One. Nov. 30, 1972.]

FRANK PISANO & ASSOCIATES et al.,
Plaintiffs, Cross-defendants and Appellants, v.
ROBERT C. TAGGART et al.,
Defendants, Cross-defendants and Respondents;
ABE HYMAN, Defendant, Cross-complainant and Appellant;
MABEL HYMAN, Cross-complainant and Appellant.

2

4

**COUNSEL**

Robert S. Sturges for Plaintiffs, Cross-defendants and Appellants.

Abramson & Church and Robert M. Hinrichs for Defendant, Cross-complainant and Appellant and for Cross-complainant and Appellant.

No appearance for Defendants, Cross-defendants and Respondents.

**OPINION**

**MOLINARI, P. J.**—This is an appeal by plaintiffs Frank Pisano & Associates and Charles W. Davidson Co. (hereinafter collectively referred to as "plaintiffs"), seeking reversal of a judgment denying them the right to foreclose a mechanic's lien, and by cross-complainants Abe Hyman and Mabel Hyman from a judgment denying them monetary damages on their cross-complaint.

### The Facts

In 1962 Robert Taggart (hereinafter "Taggart") was the owner of certain real property located in San Benito County. This property was subject to a deed of trust in favor of Abe Hyman and Mabel Hyman securing a loan in the sum of $57,981.97. On June 10, 1963, Taggart conveyed the property to Vada Price. Taggart married Miss Price in either 1963, 1964 or 1965. (For convenience in the narration of the facts, we shall continue to refer to Mrs. Taggart as "Vada Price.")

On November 4, 1963, Taggart entered into an agreement with Charles W. Davidson, an engineer, for engineering services incident to the subdivision of part of the subject property into 110 lots at a compensation of $150 per lot. In the performance of this work Davidson associated Frank Pisano, an engineer. According to Taggart, Davidson, in addition to the engineering work, agreed to procure the annexation of the subject property to the City of Hollister; he was to procure the installation of sanitary sewers; he was to attempt to have the City of Hollister install flood control sewers; and he was to secure the required bonds and the financing for the project. Vada Price knew of this agreement and was aware of the work that Davidson was to perform.

Vada Price had entered into an agreement to sell part of the property to Statewide Builders, a construction company owned by F. R. Wenzinger.

This parcel was to be divided into 26 lots, referred to as "unit one," and Statewide Builders was to construct homes on these lots. Statewide Builders subsequently assigned its rights under the sales agreement to Wentag Construction Company (hereinafter "Wentag"), a corporation in which Wenzinger was president, Vada Price was vice-president, and Taggart was secretary-treasurer. Wentag was to act as the general contractor in the construction of the homes on "unit one." By a deed recorded August 10, 1964, Vada Price conveyed "unit one" to Wentag.

The subject property became annexed to the City of Hollister through Davidson's efforts. Davidson and Pisano made boundary and topographical surveys on the entire piece of property. A tentative map was prepared for "unit one" and it was approved by the planning commission in the spring of 1964. Subsequently, a subdivision map was prepared for "unit one." It was approved by the city council on August 5, 1964, and was recorded on the same day. The subdivision map received approval by Davidson in his capacity as city engineer. A Federal Housing Administration (hereinafter "FHA") plot plan was completed by March 10, 1964.

Davidson and Pisano made street and sewer plans for "unit one." Davidson testified that they also staked the unit for construction. It appears that this was only for the sewer lines. Davidson testified that they never staked for curb and gutters, or for rough grades, or for finished streets. It is unclear when the crews staked the sewer lines. Davidson stated that he recalled that the contractor was close to calling in the stake crew. He also stated that it must have been after August 1964 because staking cannot be done until after the subdivision map is recorded. Davidson testified that the time sheets would show when the staking was done, but Davidson did not have the time sheets with him at the trial. After August 5, 1964, an employee of Davidson worked on cost estimates. Davidson talked with Taggart regarding financing and referred him to the Sonoma Mortgage Company in Palo Alto.

Davidson testified that the development of "unit one" did not pose flood control problems. However, the rest of the property could not be subdivided unless either an off-track storm line was run out or some of the property was used to pond the overflow storm waters. Davidson could not remember whether he had spoken with Taggart about this problem prior to the time he was engaged to do the work. Taggart testified that Davidson had told him at the time that he would try to get flood control sewers into the area but that he did not know the significance of this.

As a result of the flood control problems, the FHA gave only a tentative approval to the subdivision. Davidson's referral of the parties to the Sonoma

Mortgage Company proved unproductive. Wenzinger finally obtained a tentative commitment from the Monterey Mortgage Company. As part of this commitment this lending institution stipulated that Hymans' deed of trust be subordinated to its loan. Abe Hyman refused to agree to the subordination because of the flood problem.

Wentag then reconveyed "unit one" to Vada Price following which she conveyed 13 acres of her property to the Hymans by a deed recorded on October 14, 1965. On the following day, October 15, 1965, a deed of reconveyance releasing the Hymans' deed of trust was recorded. Apparently this was a compromise to avoid foreclosure. As part of this compromise the Hymans satisfied and discharged a second deed of trust on the Taggart property. The 13-acre parcel deeded to the Hymans included "unit one."

Early in 1964, Davidson had asked Taggart for a copy of a legal description of the property. Taggart sent him a preliminary title report which showed title vesting in Vada Price as of July 10, 1963. It also showed a first deed of trust held by the Hymans and a second deed of trust held by one Fanelli. Davidson testified that Taggart told him that Vada Price only held the property in trust and that it was his property. Taggart testified that he had deeded the property outright to Vada Price, who had loaned him money, upon the understanding that if a venture for which the money was loaned was successful and he was in a position to give Vada Price stock in said venture, she would reconvey the property to him. It should be noted here that after Vada Price conveyed the 13 acres to the Hymans she conveyed the remainder of the subject property to Taggart's son, Thomas. The deed was signed by Taggart pursuant to a power of attorney from Vada Price. Taggart testified he did not know if it was a general or special power of attorney but he understood that it gave him the power to deal with the property. Taggart had also given Davidson the agreement of sale between Vada Price and Statewide Builders. In addition, he had shown Davidson a financial statement, dated December 31, 1963, which showed a secured debt of $250,000 owing from Statewide Builders to Taggart. Davidson testified that he nevertheless understood that Taggart was the owner of the property. He stated that his dealings were solely with Taggart and although Vada Price had been present in his office at several meetings she had not participated in the discussions.

Davidson sent a notice of intention to lien, dated October 25, 1965, to Taggart, Hamilton Development Company (hereinafter "Hamilton"), the City of Hollister, Blair Westfall Engineers, Abe Hyman and Western Title Company. Although Abe Hyman received a copy of the notice, it was not sent by registered mail and it was not in his name. Mabel Hyman did not receive a copy of the notice.

A mechanic's claim of lien, signed by Davidson, was recorded on November 23, 1965. It recited that "All work and materials were furnished at the request of the owner or reputed owners of the said real property, ROBERT C. TAGGART and ABE HYMAN."

Davidson testified that he had never had any discussions with the Hymans. He knew of the conveyance to the Hymans since he received a letter from Taggart dated October 22, 1965 in which he was so advised. He also knew of the deeds of trust on the subject property as disclosed by the preliminary title report Taggart had furnished him. He also stated that at the time he filed his claim of lien he was aware of some arrangement whereby Abe Hyman had acquired title to part of the property but that he did not know the details.

The record is somewhat inadequate with regard to the value of the services performed by Davidson and Pisano. Davidson did not bring any of his time sheets to the trial. He testified that $150 per lot was slightly less than the minimum fee recommended by the Association of Civil Engineers and Land Surveyors of Santa Clara County. He stated that there was less work required in Hollister and thus he charged less than the recommended fee. Davidson stated that they began charging in November of 1963 and that the last charge was made in February of 1966.

Davidson testified that he calculated his services to be worth $7,600 by first looking to the hours which had been put in and secondly by deducting from the agreed total the cost of finishing the job. Davidson introduced some boundary field notes dated January 28, 1964, and some topographical survey field notes dated January 29, 1964. He stated that he had a crew of four out on the topographical survey for two or more days. He stated that at the time the crew cost $41 per hour.

After August 5, 1964, one of Davidson's employees, whose wage rate was $12.50 per hour, spent 40 or 50 hours working on cost estimates. Davidson put in time attending meetings and conferences and attempting to secure financing.

Davidson stated that more work is required at the start of a subdivision job than at the end. He testified that the calculations and the boundaries had already been completed for "unit two." All that remained was to draft the maps and the plans and to do the construction staking. It was his opinion that the lien should be split 50-50 between "unit one" and "unit two." Davidson testified that Taggart had only requested his services with respect to 26 lots. Taggart also testified that Davidson's services were with respect to 26 lots.

It was Davidson's opinion that his services had enhanced the value of the land because it was now known that the property could be subdivided. However, he also testified that no contractor had done any work on the property and that it was still agricultural land. He acknowledged that his claim of lien was based on the total amount of time consumed on the project and this included the time he spent looking for financing and performing other nonengineering services.

Abe Hyman testified that he had no part in the subdivision venture, that he never requested any services from Davidson and that he had not received any goods or materials from Davidson. He stated that he knew at the time he acquired the 13 acres, which included "unit one," that a subdivision map had been prepared and recorded.

Hyman testified that he had agreed to sell the property to Hamilton for $78,000; that Hamilton was going to develop the property and pay him as the lots were sold; that when the lien was filed Hamilton "couldn't do anything on account of the lien"; that the sale to Hamilton "fell through because of the lien"; and that as a result of Hamilton "declining to go through with the deal" he suffered a loss of $15,000, the difference "between what I put into the property and what there was a possibility of getting."

It was also testified to by Hyman that he had found it difficult to obtain financing because of the lien; that he could not do anything with the property because of the lien; and that after the recording of the lien he obtained its release by making a "deposit." He testified further that he had received word that Hamilton was not going to use the plans prepared by plaintiffs.

On February 21, 1966, plaintiffs filed a complaint to foreclose the lien against Taggart, Abe Hyman, and Hamilton. By their amended complaint, filed May 25, 1966, they alleged, as a first cause of action, that Taggart and Hyman had agreed to pay them $7,640 for engineering services furnished at the request of Taggart and Hyman upon 29 acres of land owned by defendants. They alleged the filing of the claim of lien on November 23, 1965, and that said claim stated that "All work and materials were furnished at the request of the owner or reputed owners of said property, ROBERT C. TAGGART and ABE HYMAN." Plaintiffs alleged, further, that no notice of completion had been filed by the named defendants.

In a "second cause of action" plaintiffs alleged that on November 1, 1963, they had entered into an oral agreement whereby they would provide engineering services for which Taggart agreed to pay $16,500, and that services were thus far rendered worth $7,640, which had not been paid.

Taggart filed an answer to the complaint in which he denied its essential

allegations and pleaded the affirmative defenses of failure to state a cause of action, failure of consideration and impossibility of performance. Hyman filed an answer to the amended complaint in which he recited his claim of title and the agreement of sale with Hamilton for the sale of the 13.587-acre parcel. He denied the essential allegations of the complaint and asserted the affirmative defenses that no cause of action was stated, all necessary parties were not joined, and that plaintiffs had failed to give a proper prelien notice as required by Code of Civil Procedure section 1193.[1]

A cross-complaint was filed against plaintiffs by Abe Hyman and Mabel Hyman asserting damages because they were unable to sell the property to Hamilton as a result of the wrongful act of plaintiffs in filing a claim of lien without a proper prelien notice as required by section 1193. In said cross-complaint the Hymans alleged that by reason of the filing of said lien "the sale has been unable to proceed" and they "have been greatly injured thereby." They alleged that the amount of damages were unknown to them and that they would seek leave to amend their cross-complaint when said damages were ascertained. In a separate count they alleged that by reason of the filing of said lien a cloud was placed on their property causing a delay in the sale of said property to Hamilton pursuant to an agreement of sale. In this count the Hymans alleged they suffered damages in costs and attorney's fees in connection with the defense of the foreclosure action.

The Hymans also filed a cross-complaint against Taggart and Vada Price seeking damages for failure to convey the property to them free and clear of all encumbrances except those of record.

Pursuant to stipulation the complaint was amended to add as defendants Vada Price, E. R. Fetzer, and F. R. Wenzinger.

Plaintiffs filed a second amended complaint in the following respects: In the first cause of action it was alleged that Taggart, Abe Hyman, Hamilton, Vada Price, F. R. Wenzinger, E. R. Fetzer, and Wentag Construction Corporation were, and continued to be, the owners of the 29 acres. It was alleged that Taggart, Vada Price, Wenzinger, Fetzer, Wentag, and Hyman requested the engineering services. The second cause of action alleged that Taggart, Vada Price, Wenzinger, Hamilton, Fetzer, and Wentag entered into the oral contract.

Wenzinger, Wentag and Vada Price did not answer the second amended complaint and their defaults were entered. Vada Price did not timely answer

---

[1] All code references are to the Code of Civil Procedure unless otherwise indicated.

the Hyman cross-complaint and her default thereon was duly entered. Issue was joined as to all other parties on the respective pleadings.

Before the commencement of the trial, Taggart was permitted to amend his answer to set forth the fact that he individually had filed for bankruptcy in action number 109541 in the United States District Court of the Northern District of California, and that on January 20, 1969, he received a discharge for the debts listed in his petition, which included the alleged debt to plaintiffs.

Upon the trial the court found that plaintiffs had rendered services at the request of Taggart, Wenzinger, and Wentag and that these services were of the value of $3,900 and were improvements to and were performed upon the subject property. The court also found that the owners of the property on the date of the filing of the "Notice of Intention to Lien" and the "Mechanic's Claim of Lien" were Vada Price, as to a portion of the subject property, and Abe and Mabel Hyman, as tenants in common, as to the remainder; that the "Notice of Intention to Lien" did not name the owners and it was not served upon them; that the "Mechanic's Claim of Lien" failed to name Vada Price and Mabel Hyman, as owners, and it was recorded with the knowledge that a prelien notice had not been served on Abe Hyman; and that plaintiffs failed to name Mabel Hyman as a party to the instant action.

With respect to the cross-complaint, the court found that when Abe and Mabel Hyman acquired ownership of approximately 13 acres of the subject property they entered into an agreement to sell it to Hamilton; that the recording of the "Mechanic's Claim of Lien" placed a cloud upon this property; and that after recordation and because of such claim of lien Hamilton cancelled its agreement to buy the property. No other finding was made with respect to plaintiffs' cross-complaint.

The court concluded as a matter of law that the allegations contained in the first cause of action of the second amended complaint were insufficient to state a cause of action; that the failure to give proper prelien notices to Abe Hyman, Mabel Hyman and Vada Price negated any lien; that the interests in the property which the Hymans had previously held by virtue of first deeds of trust were prior to and superior to any mechanic's lien for services rendered subsequent thereto, even if such a lien would otherwise have been valid; and that Mabel Hyman, as a tenant in common, was a necessary party to the action, and the failure to have named her was fatal to the cause of action to enforce the lien. The court also concluded that plaintiffs were entitled to an in personam judgment against Wenzinger, Wentag and Taggart for $3,900.

Plaintiffs were awarded an in personam judgment against Wenzinger, Wentag and Taggart in the sum of $3,900. The judgment provided that the Hymans were to receive nothing on their cross-complaint because the claim of lien which had been recorded against their property was not a valid lien. Plaintiffs appeal from the whole of the judgment and the Hymans appeal from that portion denying them any relief on their cross-complaint.

*Contentions*

Plaintiffs raise numerous issues upon appeal. These may be summarized as follows: First, they urge that Vada Price had appointed her husband her agent and therefore the court erred in not finding that she authorized or ordered the engineering work. In connection with this argument they also contend that it was error for the court to have found that a prelien notice to Vada Price was necessary. It may be noted that plaintiffs had proposed a counterfinding respecting agency and of the lack of necessity of sending a prelien notice. Second, they argue that the court erred in not finding that Vada Price, as owner, was deemed to have requested the engineering work which she knew was being performed when she did not file a notice of nonresponsibility under section 1183.1. This allegation was not made in the pleadings and there is no evidence in the record respecting either the filing or lack of filing of such a notice. Third, they request this court to take judicial notice of a federal court decision in which it was found that Robert Taggart had been the actual owner of the property since 1962. Fourth, they contend that it was error for the court to have found that a prelien notice to Abe and Mabel Hyman was necessary. Fifth, plaintiffs argue that the court erred in finding that their failure to name Mabel Hyman as a party defendant in this action was fatal to the foreclosure of a lien against her interest in the property. Their sixth contention is that the court erred in arbitrarily reducing the compensation to which they were entitled under the agreement by one-half.

The Hymans, in reply to plaintiffs' brief, contend that plaintiffs failed to prove that the services which they provided qualified for a mechanic's lien. This is apparently an attack upon the trial court's finding that the services "were improvements to and were performed upon the subject property." In support of their own appeal, the Hymans argue that plaintiffs failed to perfect a lien against the property held by the Hymans and that the trial court erred in denying recovery on the cross-complaint. In response plaintiffs argue that the claim of lien filed by them was privileged under Civil Code section 47, subdivision 2, and, therefore, that no liability can be predicated upon its filing even if it was not a valid claim of lien.

## Validity of Lien as Against Vada Price

### A. *Agency*

At the conclusion of the trial plaintiffs requested a finding that Taggart was the agent of Vada Price and that, as such agent, he requested the services performed by plaintiffs. The requested finding was refused and error is predicated on such refusal.

Taggart testified that his wife was aware of the subdivision scheme from the start because she was an officer of Wentag and attended all of its meetings. He also stated that she entered into an agreement to convey the parcel which comprised "unit one" to Statewide Builders, a construction company. After Statewide Builders assigned their rights under the agreement to Wentag, Vada Price conveyed the parcel to it. Taggart also testified that his wife obtained a loan in order to assist Davidson in securing the installation of sanitary sewers.

It is thus clear that Vada Price was aware of the agreement which her husband had entered into with plaintiffs. It is apparent that she approved of the action which her husband was taking with respect to the development of her property. Not only did she enter no objection, but she affirmatively acted so as to facilitate the progress of the plan. There is no testimony by Taggart indicating that he did not believe that he was authorized to enter into the agreement with plaintiffs.

The testimony of Davidson does not in any way mandate a different inference with respect to Taggart's authority to enter into the agreement. With regard to our consideration of this testimony, we note that while the declarations of an agent, other than his own testimony, are not admissible to prove agency, they are nevertheless admissible after prima facie proof of the agency has been made. (*Syar* v. *U.S. Fidelity & Guar. Co.*, 51 Cal.App.2d 527, 532 [125 P.2d 102]; see also Evid. Code, § 1222.) The testimony of Taggart, which we have just reviewed, established a prima facie case.

Davidson stated that Taggart told him that his wife held the property as trustee only. It does not follow from this that Taggart did not believe that he was authorized by Vada Price to enter into agreements respecting the development of the property. On the contrary, in his dealings with Davidson, Taggart represented that he did have such authority. Davidson also testified that Vada Price attended meetings at his office with her husband but that she did not participate in the discussions. This testimony further demonstrates that Vada Price was aware of the action which her husband was taking and that she approved of it.

■ The existence of agency is generally a question of fact. Any reasonable inference drawn by the trial judge is entitled to the same consideration as other findings of fact drawn from conflicting evidence. (*Brokaw* v. *Black-Foxe Military Institute,* 37 Cal.2d 274, 278 [231 P.2d 816], citing *Willey* v. *Clements,* 146 Cal. 91, 96 [79 P. 850].) ■ The existence of actual agency "may be implied from the conduct of the parties." (*Thayer* v. *Pacific Elec. Ry. Co.,* 55 Cal.2d 430, 438 [11 Cal.Rptr. 560, 360 P.2d 56].) " 'An agency relationship may be informally created. No particular words are necessary, nor need there be consideration. All that is required is conduct by each party manifesting acceptance of a relationship whereby one of them is to perform work for the other under the latter's direction. [Citations.]' " (*Hanks* v. *Carter & Higgins of Cal., Inc.,* 250 Cal.App.2d 156, 161 [58 Cal.Rptr. 190].)

■ Similarly, the actual authority of the agent may be implied from the conduct of the parties. "Actual authority arises as a consequence of conduct of the principal which causes *an agent* reasonably to believe that the principal consents to the agent's execution of an act on behalf of the principal. [Citations.]" (*Tomerlin* v. *Canadian Indemnity Co.,* 61 Cal.2d 638, 643 [39 Cal.Rptr. 731, 394 P.2d 571]; *Miller* v. *Wood,* 188 Cal.App. 2d 711, 713 [10 Cal.Rptr. 770].)

■ "The rule is well established that the fact of agency when it rests in parol may be established on the trial by the testimony of the agent himself." (*Kast* v. *Miller & Lux,* 159 Cal. 723, 727 [115 P. 932]; *Sokolow* v. *City of Hope,* 41 Cal.2d 668, 674 [262 P.2d 841].) The testimony given by Taggart constitutes substantial evidence of the existence of an agency relationship.

■ In the instant case only one reasonable inference can be drawn by a reasonable person. That inference is the one that points to Taggart as the actual agent of Vada Price. The question of Taggart's agency, therefore, becomes one of law. (*Winningar* v. *Bales,* 194 Cal.App.2d 273, 276 [14 Cal.Rptr. 908]; 6 Witkin, Cal. Procedure (2d ed. 1971) § 255, p. 4247.)

■ We find no merit in the suggestion that there was a variance between the pleadings of the amended complaint to the effect that plaintiffs' services were requested by Taggart, Vada Price, Abe Hyman, Hamilton, Wenzinger, Fetzer and Wentag and the proof adduced at the trial. While there may have been a failure of proof as to the other named defendants, we perceive no variance as to Taggart and Vada Price. There was ample evidence that Taggart personally requested the services and if, as set out above, he requested such services as Vada Price's agent, these services were, in contemplation of law, actually requested by Vada Price.

In any event, even if there was a variance, none of the parties were misled or prejudiced by it. "No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. . . ." (§ 469.) ■ "It has long been settled law that where (1) a case is tried on the merits, (2) the issues are thoroughly explored during the course of the trial and (3) the theory of the trial is well known to court and counsel, the fact that the issues were not pleaded does not preclude an adjudication of such litigated issues and a review thereof on appeal. [Citations.]" (*Duncan* v. *Sunset Agricultural Minerals,* 273 Cal. App.2d 489, 494 [78 Cal.Rptr. 339].) The record which we have reviewed above discloses that all parties introduced evidence respecting the interest held by various individuals in the subject property and their relationship with the engineers. The record thus does not show that any of the defendants would be prejudiced by a finding of agency. (See also *Ingersoll* v. *Chaplin,* 127 Cal.App. 290 [15 P.2d 790], finding a similar variance between statements in the claim of lien and allegations in the complaint immaterial.)

Moreover, there is no indication that any party objected to the introduction of evidence which pertained to an agency relationship. It is the usual rule that the failure to enter an objection below constitutes a waiver. (*Fischer* v. *Ostby,* 127 Cal.App.2d 528, 530 [274 P.2d 221]; *Arguello etc. Protective Assn.* v. *Crofton,* 118 Cal.App.2d 511, 513 [258 P.2d 97]; *Zander* v. *Texaco, Inc.,* 259 Cal.App.2d 793, 802 [66 Cal.Rptr. 561].)

It is provided by statute that where a variance is not material the trial court may direct the fact to be found according to the evidence. (§ 470.) Where such a finding was not made by the trial court it may be made by the appellate court since this court has the authority to amend the findings to conform to proof. (*Fitzsimmons* v. *Fitzsimmons,* 72 Cal.App.2d 545, 549 [164 P.2d 934].)

A finding of agency might be viewed as a new finding as opposed to an amendment of the existing findings. If so, such a finding is authorized by section 956a and rule 23(a) of the California Rules of Court. "The purpose of section 956a is to enable appellate courts, in appropriate cases, to terminate litigation by affirmance, or modification and affirmance, of the judgment, or by reversal with directions to enter judgment for appellant if it appears that on no reasonable theory could respondent make a further showing in the trial court. [Citations.]" (*People* v. *Benford,* 53 Cal.2d 1, 6 [345 P.2d 928].)

■ In the present case all of the parties introduced evidence respecting

the ownership of the subject property and the request for the services of plaintiffs. As already pointed out, the evidence that Taggart was Vada Price's agent is conclusive. It is thus appropriate for us to make a finding and to reverse the judgment, insofar as it invalidated the claim of lien against the property held by Vada Taggart, and to direct the trial court to enter a judgment accordingly.

## B. *Prelien Notice*

 Section 1193, subdivision (a) (now Civ. Code, § 3097, subd. (a)) provided at times pertinent to this case, in relevant part, that "Except one under direct contract with the owner . . . , every person who furnishes labor, service, equipment or material for which a lien otherwise can be claimed under this chapter, must, as a necessary prerequisite to the validity of any claim of lien . . . , cause to be given . . . a written notice as prescribed by this section, to the owner or reputed owner . . . ." The trial court concluded, in part, that Davidson and Pisano's "failure to give proper pre-lien notices to . . . VADA TAGGART negate[s] any lien on the properties sought, for [she was an owner] of the subject property."

In *Schrader Iron Works, Inc.* v. *Lee,* 26 Cal.App.3d 621, 630 [103 Cal.Rptr. 106], we pointed out that it is not necessary for a lien claimant to give a prelien notice to an owner of property with whom the claimant entered into a direct contract for the performance of the work or the furnishing of materials where such owner owned the property at the time the contract was made. (See *M. Arthur Gensler, Jr. & Associates, Inc.* v. *Larry Barrett, Inc.,* 7 Cal.3d 695, 706 [103 Cal.Rptr. 247, 499 P.2d 503].)

In the present case Taggart was acting as the agent of Vada Price when he entered into the agreement with plaintiffs. "An agent represents his principal for all purposes within the scope of his actual or ostensible authority, and all the rights and liabilities which would accrue to the agent from transactions within such limit, if they had been entered into on his own account, accrue to the principal." (Civ. Code, § 2330.) Thus a disclosed principal may be held liable on a contract made solely in the name of the agent where it is plainly inferable that the agent intended to bind the principal. (*Sunset Milling & Grain Co.* v. *Anderson,* 39 Cal.2d 773, 778 [249 P.2d 24].) Accordingly, since Taggart contracted directly with plaintiffs and since such contract in contemplation of law is deemed the contract of his principal, Vada Price, as such principal, was an owner who contracted directly with plaintiffs. As such owner she was not entitled to a prelien notice.

 Plaintiffs also seek to fasten amenability to a lien on Vada

Price's property by reason of her alleged failure to file a notice of non-responsibility pursuant to section 1183.1, subdivision (b). This statute provides that any work which is performed with the knowledge of the owner shall be held to have been performed at the owner's request, and that the owner's interest in the property shall be subject to any lien which is filed unless the owner gives a notice of nonresponsibility within 10 days after having obtained knowledge of the work.

Although the evidence discloses that Vada Price had knowledge of the work being performed by plaintiffs, the record is barren as to whether she did or did not file a notice of nonresponsibility. Plaintiffs did not allege in their complaint that Vada Price had not filed such notice. They did not introduce any evidence on this issue nor did they request any findings on the issue.

Section 1183.1 rests upon the doctrine of estoppel. (*Nolte* v. *Smith*, 189 Cal.App.2d 140, 144 [11 Cal.Rptr. 261, 87 A.L.R.2d 996].) "[W]here estoppel is an element of the action, it must be especially pleaded in the complaint with sufficient accuracy to disclose the facts relied upon and plaintiff must prove all of the essential elements constituting it." (*Windsor Mills* v. *Richard B. Smith, Inc.*, 272 Cal.App.2d 336, 341 [77 Cal.Rptr. 300].) In the instant case plaintiffs have failed to meet either of these requirements. On occasion a change of theory will be permitted upon appeal when it raises only a question of law. (*Grover* v. *Tindall*, 242 Cal.App.2d 427, 434 [51 Cal.Rptr. 617].) This principle is inapplicable as there are no facts appearing in the record regarding the filing or nonfiling of the notice of nonresponsibility. It follows that plaintiffs are precluded from raising the issue for the first time on appeal.[2]

## C. *The Claim of Lien*

The trial court found that the claim of lien "failed to name VADA TAGGART and MABEL HYMAN, who were then owners of the subject prop-

[2]We observe that even if Vada Price was a noncontracting owner she would be placed in the position of a party to the contract entered into by Taggart with plaintiffs if she had knowledge of the work being performed by plaintiffs *and* she failed to file a notice of nonresponsibility. In such a situation a presumption is created by section 1183.1, subdivision (b) that the work was done at her instance and request and plaintiffs would have been deemed to be "under direct contract" with Vada Price, the owner, and thus excepted by the terms of former section 1193, subdivision (a), from its requirement that a prelien notice be served. (*M. Arthur Gensler, Jr. & Associates, Inc.* v. *Larry Barrett, Inc., supra,* 7 Cal.3d 695, 707; *Schrader Iron Works, Inc.* v. *Lee, supra,* 26 Cal.App.3d 621, 632, 633; *Halspar, Inc.* v. *La Barthe,* 238 Cal. App.2d 897, 899-900 [48 Cal.Rptr. 293]; *Benson Elec. Co.* v. *Hale Bros. Assoc., Inc.,* 246 Cal.App.2d 686, 693 [55 Cal.Rptr. 73]; *Scott, Blake & Wynne* v. *Summit Ridge Estates, Inc.,* 251 Cal.App.2d 347, 354 [59 Cal.Rptr. 587].)

erty." The Hymans contend that this is another reason for invalidating the claim of lien.

Section 1193.1, subdivision (j) (now contained in Civ. Code, § 3084, subd. (b)), at times pertinent to this case, provided in part, that the claim of lien contain "the name of the owner or reputed owner, if known." The claim of lien filed by plaintiffs contained the following: "All work and materials were furnished at the request of the owner or reputed owners of the said real property, ROBERT C. TAGGART and ABE HYMAN."

As would seem to be indicated by the clear words of the statute, it is sufficient to give only the name of the reputed owner. When an individual does so in good faith, he does not lose his lien if he subsequently determines that some other individual is the actual owner. (*Bryan* v. *Abbott,* 131 Cal. 222, 224 [63 P. 363]; *Ingersoll* v. *Chaplin, supra,* 127 Cal.App. 290, 291.) In view of the representations made by Taggart to Davidson, plaintiffs acted reasonably in naming him as the reputed owner. The claim is thus not defective as to Vada Price because of the subsequent determination that she was the actual owner.

### The Services Performed

The trial court found that the services provided by plaintiffs "were improvements to and were performed" upon the subject property. Abe Hyman, in his reply brief, argues that "there is no evidence in the record to show that any additions, changes, construction or improvements were actually done on the land itself so as to qualify for the imposition of a valid mechanic's lien."

Section 1181 (now Civ. Code, § 3110), at times pertinent to this case, provided, in relevant part, that ". . . registered engineers, licensed land surveyors, . . . performing labor upon or bestowing skill or other necessary services on, . . . the construction, alteration, addition to, or repair, either in whole or in part, of, any building, structure, or other work of improvement shall have a lien upon the property upon which they have bestowed labor or furnished materials or appliances for the value of such labor done . . . whether done or furnished at the instance of the owner or of any person acting by his authority or under him, . . . ."

Section 1184.1 (now replaced by Civ. Code, § 3112), at times pertinent to this case, provided, in part, that "Any person who, at the instance or request of the owner . . . of any lot or tract of land, grades, fills in, or

otherwise improves the same, . . . has a lien upon said lot or tract of land for his work done and materials furnished."

Section 1182 (now contained in Civ. Code, §§ 3106, 3110, 3111), at times pertinent to this case, provided, in relevant part, that "(a) . . . 'work of improvement' includes, but is not restricted to, . . . the filling, leveling, or grading of any lot or tract of land, . . . (b) For the purpose of this chapter, except as otherwise provided herein, 'work of improvement' and 'improvement' mean the entire structure or scheme of improvement as a whole. . . ."

In *Nolte* v. *Smith, supra,* 189 Cal.App.2d 140, a licensed civil engineer claimed a mechanic's lien for his services which consisted of "surveying, planning and mapping said property for such subdivision, preparing a subdivision map for recording, and constructing and erecting permanent markers and monuments upon said property; . . ." (At p. 142.) The court held that "the setting of permanent monuments in the ground, for land subdivision, following extensive engineering services, is . . . the commencement of a 'work of improvement,' or 'improvement,' and an integral and essential part of the 'scheme of improvement' as those terms are used in Code of Civil Procedure, section 1182." (At pp. 149-150.)

It follows from the holding of *Nolte* that the issue raised by Hyman is whether there is substantial evidence in the record that plaintiffs provided engineering services and set permanent monuments in the ground. ██ In reviewing the record all of the evidence which is in favor of the court's finding must be accepted as true and that unfavorable discarded as not warranting belief. (*Guardianship of Mosier,* 246 Cal.App.2d 164, 169 [54 Cal.Rptr. 447].) "[T]he testimony of only one witness found worthy of belief is sufficient for the proof of any fact. . . ." (*Michael Distributing Co.* v. *Tobin,* 225 Cal.App.2d 655, 660-661 [37 Cal.Rptr. 518].)

██ Davidson testified that his crews made boundary and topographic surveys. He further stated that a tentative map of "unit one" was drawn and that it received the approval of the planning commission. A subdivision map of "unit one" was subsequently drawn up and it was recorded. Davidson also testified that crews were sent out to stake for sewers. There was thus substantial evidence that significant engineering services were provided and that markers were placed in the ground in accordance with the plans for the sewers. It follows that the services constituted a work of improvement upon the property and that the trial court's finding to that effect was correct.

## Value of Services

The trial court found that the value of the services rendered was $3,900. Plaintiffs contend upon appeal that this finding constitutes an arbitrary reduction by one-half of the amount which they claimed was owing under the contract. They submit "there is no basis in the evidence upon which to support the court's finding."

" '[W]hen a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any *substantial* evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. . . . [Citation.]' The rule quoted is as applicable in reviewing the findings of a judge as it is when considering a jury's verdict." (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].) "[W]hen two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. [Citations.]" (*Mashon* v. *Haddock,* 190 Cal.App.2d 151, 165 [11 Cal.Rptr. 865].)

We have previously reviewed the evidence pertaining to the value of the services which were rendered. The record discloses that Davidson did not offer any time sheets to substantiate his claim that the services performed prior to cessation were worth one-half of the agreed price for the entire job. Robert Taggart testified that Davidson picked up the 26 lots which had been the subject of a previous contract with another engineer and just went ahead from there. The trial court was thus entitled to infer in the absence of clear proof of the amount claimed that the services were worth less than the value set forth in the claim of lien. As the trial court's finding was a reasonable inference from the evidence submitted it may not be set aside on appeal. (*Mashon* v. *Haddock, supra,* 190 Cal. App.2d 151, 165.)

## Judgment in United States District Court

Following the filing of the bankruptcy petition by Taggart the United States brought an action to determine whether his property should be disposed of at a public or private sale. In addition to Taggart, plaintiffs and Vada Price were named as defendants in said action. The federal court determined that Taggart was the owner of the subject property from and after February 24, 1959, subject to such encumbrances as were outstanding, and that the deed from Taggart to Vada Price was a fraudulent conveyance. The judgment in said action provides that if plaintiffs prevail on this appeal and obtain a lien on such property, they will be declared to

have a lien on the bankrupt's property in the amount determined in this appeal or by marshaling the lien as determined by the federal court.

Plaintiffs request this court to take judicial notice of the findings of fact and conclusions of law, and of the judgment rendered by the United States District Court in case No. C-47613-RFP. Although we could take judicial notice (Evid. Code, § 452, subds. (c) and (d)), we decline to do so.

The judgment of the United States District Court was rendered subsequent to the judgment appealed from in the instant case. There is no indication that the judgment has become final. The decision is concerned in part with the question of fraudulent conveyances, an issue which was never considered in the instant case. As neither the interests of justice nor the equities of the case require an exercise of our discretion, we decline to notice the decision of the United States District Court. (Cf. *Taliaferro* v. *Davis*, 216 Cal.App.2d 398, 401 [31 Cal.Rptr. 164].)

### *Validity of Lien as Against the Hymans*

As noted above, Vada Price conveyed a portion of the subject property to Abe Hyman and Mabel Hyman, as tenants in common, by a deed which was recorded on October 14, 1965. Abe Hyman received by regular mail a copy of plaintiffs' notice of intention to lien dated October 25, 1965. This notice was addressed to Taggart and Hamilton as the owners of the property and was enclosed in an envelope addressed to Abe Hyman. It was not delivered personally to him or left with some person in charge at his address or place of business, nor was it sent by registered or certified mail as required by section 1193. Abe Hyman acknowledged, however, that he received a copy of the notice. No such notice was ever given to Mabel Hyman, nor was she ever made a party to the instant action.

The trial court made the following conclusions of law in regard to its rejection of plaintiffs' claim of lien upon the property held by the Hymans: the failure to name Mabel Hyman as a party defendant was fatal to the cause of action; the lien was negated by the failure to send a prelien notice to Abe Hyman and Mabel Hyman; even if the lien were valid the interests held by the Hymans by virtue of their first deeds of trust were prior and superior to it.

 "[P]ersons whose interests, rights, or duties will inevitably be affected by any decree which can be rendered in the action" are indispensible parties. (*Bank of California* v. *Superior Court*, 16 Cal.2d 516, 521 [106 P.2d 879]; *Bowles* v. *Superior Court*, 44 Cal.2d 574, 583 [283 P.2d

704].) If such persons are not before the court, the court is without jurisdiction. (*Bank of California* v. *Superior Court, supra,* at p. 523.)

Section 384 provides, in relevant part, that "All persons holding as tenants in common, . . . may jointly or severally commence or defend any civil action or proceeding for the enforcement or protection of the rights of such party." However, this provision does not apply to situations where the rights of the other cotenant will be affected. (3 Witkin, Cal. Procedure (2d ed. 1971) § 144, p. 1818; see *Solomon* v. *Redona,* 52 Cal. App. 300, 305 [198 P. 643]; *Jameson* v. *Chanslor etc. Oil Co.,* 176 Cal. 1, 10 [167 P. 369]; *Worthington* v. *Kaiser Foundation Health Plan, Inc.,* 8 Cal.App.3d 435, 445 [87 Cal.Rptr. 272].) This principle is particularly applicable here in view of the failure of the claim of lien or the complaint to foreclose the lien to affirmatively state that the lien is only in respect to the interest of one cotenant.

It has been held that persons who became the owners of property prior to the time a claim of mechanic's lien is recorded are indispensible parties in an action brought to foreclose the lien. The trial court must deny foreclosure as to such parties although it may grant foreclosure against other parties properly before the court who own other property upon which the lien is claimed. (*Packard Bell, etc. Corp.* v. *Theseus, Inc.,* 244 Cal.App.2d 355, 364-365 [53 Cal.Rptr. 300].) ■■■ Applying these principles to the instant case it follows that while the trial court might have properly granted foreclosure against the property held by Vada Price, it could not have granted the same affirmative relief against the property held by Abe Hyman and Mabel Hyman.

Plaintiffs rely on the case of *Yearout* v. *American Pipe & Steel Corp.,* 74 Cal.App.2d 139 [168 P.2d 174]. In *Yearout* it was held that the wife was not an indispensible party to an action to foreclose a mechanic's lien upon community property held in the name of the husband. (At p. 144.) The instant case is distinguishable. First, in the present case the property was held in the names of both spouses. Secondly, there is no indication that the Hyman property was community property. In view of plaintiffs' failure to either allege or enter proof as to the latter consideration, we decline to extend the reasoning of *Yearout* to the instant case.

Former section 1198.1, subdivision (a) (now Civ. Code, § 3144) provided that a lien does not bind "any property for a longer period than 90 days after the same has been filed . . . , unless within that time, proceedings to enforce the same be commenced in a proper court." It follows that the mechanic's claim of lien as to the portion of the property held by the Hymans has expired. (*Packard Bell etc. Corp.* v. *Theseus, Inc., supra,*

244 Cal.App.2d 355, 361.) The judgment below was thus correct insofar as it provided that plaintiffs did not have a valid lien against that portion of the property held by Abe Hyman and Mabel Hyman. As a result of our conclusion that Mabel Hyman was an indispensible party, it is unnecessary to discuss the propriety of the other conclusions set forth by the trial court in support of this part of the judgment, although it is clear that as to Mabel Hyman the lien is undoubtedly invalid because of plaintiffs' failure to serve her with a prelien notice. (§ 1193.)

## The Hyman Cross-complaint

The damages sought by the Hymans in their cross-complaint were apparently sought on the theory of wrongful disparagement of their title. As already pointed out, they were denied any award on their cross-complaint.

The tort of wrongful disparagement of title has been defined as follows: " 'One who, without a privilege to do so, publishes matter which is untrue and disparaging to another's property in land, chattels or intangible things under such circumstances as would lead a reasonable man to foresee that the conduct of a third person as purchaser or lessee thereof might be determined thereby is liable for pecuniary loss resulting to the other from the impairment of vendibility thus caused.' " (*Gudger* v. *Manton,* 21 Cal.2d 537, 541 [134 P.2d 217], quoting Rest., Torts, § 624 [overruled in part on other grounds, *Albertson* v. *Raboff,* 46 Cal.2d 375, 381 (295 P.2d 405)].)

Plaintiffs contend that the judgment denying the Hymans any award was proper for the recordation of the claim of lien was privileged under Civil Code section 47, subdivision 2. This section provides that a publication made "In any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law . . ." is privileged.

The import of section 47, subdivision 2 of the Civil Code was considered by our Supreme Court in the case of *Albertson* v. *Raboff,* 46 Cal.2d 375 [295 P.2d 405]. The court held that the filing of a notice of lis pendens was privileged within the meaning of section 47, subdivision 2. (At p. 381.) In reaching its decision, the court made the following statement respecting the scope of the privilege afforded by section 47, subdivision 2: "It is our opinion that the privilege applies to any publication, such as the recordation of a notice of lis pendens, that is required (e.g., Code Civ. Proc., § 749) or permitted (e.g., Code Civ. Proc., § 409) by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is invoked. [Citation.] Thus, it is not limited to the pleadings, the oral or written evidence, to publications in open court or in briefs or affi-

davits. If the publication has a reasonable relation to the action and is permitted by law, the absolute privilege attaches. [Citations.]" (At pp. 380-381.)

█ Applying this reasoning to the instant case, it must be concluded that the filing of a claim of mechanic's lien in conjunction with a judicial proceeding to enforce it is privileged within the meaning of Civil Code section 47, subdivision 2. The recording of the claim of lien is clearly authorized by law (see former § 1193.1) and it is related to an action to foreclose. (See former § 1198.1.)

We conclude, therefore, that the absolute privilege attached in the present case. The filing of a mechanic's lien was permitted by law and it had a reasonable relation to an action to foreclose the lien. Any deficiencies in the lien procedure were a matter of defense to the action and did not militate against the privilege. In *Albertson* the filing of a lis pendens was held to be privileged notwithstanding it was later held in the action that the person filing the lis pendens was not entitled to any relief.[3] (46 Cal.2d at pp. 380-381.) In the present case Abe Hyman acknowledged that he received a copy of the notice of intention to lien. The question whether the deficiencies in not directly naming him as an owner or reputed owner and serving him in a manner other than as provided in former section 1193 rendered the claim of lien invalid were matters to be determined in the foreclosure suit.

We observe, moreover, that it was incumbent upon the Hymans to plead and prove the damages caused by the alleged disparagement matters. █ The pecuniary loss for which a publisher of disparaging matter is liable is restricted to that pecuniary loss which directly and immediately results from the impairment of the vendibility of the thing in question caused by the publication of the disparaging matter and the expense of litigation reasonably necessary to remove the doubt cast by the disparagement on the property. (*Davis* v. *Wood*, 61 Cal.App.2d 788, 797 [143 P.2d 740]; see *Gudger* v. *Manton, supra*, 21 Cal.2d 537, 554-555; Rest., Torts, § 624.)

In the instant case the Hymans did not plead any special damages nor did they seek to amend their complaint to allege such damages or to conform to proof. The only evidence going to the question of damages was that the Hymans had agreed to sell the property to Hamilton for $78,000 which was to be paid as the lots were sold by Hamilton who was

---

[3]In *Albertson* it was held, however, that the fact that the recording of the lis pendens was privileged did not prevent such recording from being an element in an action for malicious prosecution in a proper case. (46 Cal.2d at p. 382.)

going to develop the property, and that they lost $15,000 because Hamilton would not go through with the deal because of the mechanic's lien and that this loss was the difference between what the Hymans "put into the property and what there was a possibility of getting." We think this evidence insufficient and merely speculative. There was no evidence whether the cancellation of the deal was by mutual consent or whether the Hymans were duty bound under their agreement with Hamilton to release it from its obligations because of the lien. Nor does it appear whether the Hymans still have a right of action to enforce the contract with Hamilton. We observe, further, that Hyman did secure a release of the lien by the deposit of $4,000 to await the outcome of the lien litigation. In addition it should be noted that no damages were proved with respect to the cost of clearing the title.

Moreover, California still adheres to the rule that it does not suffice to allege and prove that one has been damaged because a third party has failed to fulfill his responsibilities under an existing contract to buy land. (*Burkett* v. *Griffith,* 90 Cal. 532, 540 [27 P. 527]; Prosser on Torts (2d ed.) pp. 945-946.) Such damage may be compensated by an action against such third party since the law supposes that in such actions the plaintiff would receive full indemnity. (*Burkett* v. *Griffith, supra;* Prosser, *supra.*) In the present case all that the evidence adduced discloses is that Hamilton refused to fulfill its contract in consequence of the alleged disparagement of the Hymans' title. If the Hymans have released Hamilton from the obligations of his contract or if they do not desire to enforce the same, whatever damage they have suffered is the result of their own voluntary act and they may not visit such damages on plaintiffs. (*Burkett* v. *Griffith, supra,* at p. 541.)

### Conclusion

The trial court erred in not finding that Taggart was the agent of Vada Price, and in finding that the services performed by plaintiffs were not authorized by Vada Price. The court also erred in finding that the notice of intention to lien was defective because it did not name Vada Price as an owner and because it was not served on her. It was also error to find that the recording of the claim of mechanic's lien placed a cloud upon that portion of the subject property owned by the Hymans at the time the claim of lien was filed. Accordingly, the court erred in concluding that the allegations of the first cause of action of the second amended complaint failed to state a cause of action against Vada Price, in concluding that the failure to give a prelien notice to Vada Price negated any lien on the portion of the property owned by her, i.e., all the subject property save and

except the 13.587 acres conveyed by her to the Hymans; and in concluding that plaintiffs have no lien against said portion of the property owned by her, and in concluding that the claim of lien filed against said property is invalid. In sum, the conclusion of law, based upon proper findings, should be amended to provide that plaintiffs have a valid lien against the portion of the subject property owned by and standing in the name of Vada Price at the time said claim of lien was filed.

That portion of the judgment providing that plaintiffs do not have a valid lien and have no interest in that portion of the subject property owned by Vada Price at the time the instant claim of lien was filed is reversed. The other portions of the judgment are affirmed. The trial court is directed to amend its findings of fact, conclusions of law, and the judgment in accordance with the views herein expressed. Each of the parties shall bear his costs on appeal.

Sims, J., and Elkington, J., concurred.