[No. G018844. Fourth Dist., Div. Three. Oct. 12, 2000.]

THOMAS J. O'KEEFE, Plaintiff and Appellant, v.
MARK A. KOMPA et al., Defendants and Respondents.

## COUNSEL

Thomas J. O'Keefe, in pro. per.; Good, Wildman, Hegness & Walley and Aaron P. Morris for Plaintiff and Appellant.

Mark A. Kompa, in pro. per.; Donald P. Studer, in pro. per.; and William M. Hensley for Defendants and Respondents.

## OPINION

**CROSBY, J.**—Plaintiff Thomas J. O'Keefe sued defendants for abuse of process and title disparagement after defendants initiated collection efforts on a judgment on appeal. That judgment was against O'Keefe personally and arose out of an earlier action he brought for attorney fees under Civil Code section 1717. The superior court sustained defendants' demurrers without leave to amend, reasoning an undertaking was required under Code of Civil Procedure sections 916 and 917.1 to stay collection efforts pending appeal. For the reasons set forth below, we affirm.

I

In the underlying litigation, O'Keefe sought to recover $30,000 he was forced to pay as guarantor on a loan to a failed business entity. He also sought attorney fees based on a fee-shifting provision in the loan documents. Not only did O'Keefe lose that case, but also he was ordered to pay just over $50,000 for defendants' attorney fees under Civil Code section 1717. O'Keefe appealed the judgment, including the attorney fees order, but posted no bond or undertaking (believing none was required). We subsequently affirmed.[1]

While that appeal was pending, however, attorneys for the two subsets of the present defendants took steps to secure payment of the attorney fees judgment. That is, Attorney Donald Studer, representing several individual defendants in the underlying action, levied on a bank account of O'Keefe's law partnership, while Attorney Mark A. Kompa, who represented the balance of the defendants, filed an abstract of judgment with the Orange County Recorder's Office.

O'Keefe was not amused. Several months later he sued Attorney Kompa and his clients, as well as Studer, for abuse of process and slander of title.[2] The gist of plaintiff's complaint was that his appeal of the underlying judgment and attorney fees order automatically stayed any collection efforts

[1]That affirmance came on December 29, 1997, in *O'Keefe v. Brown* (G016677) (nonpub. opn.).

[2]For some reason, O'Keefe did not name any of Studer's clients as defendants.

under Code of Civil Procedure sections 916 and 917.1. Defendants demurred, arguing in the alternative that (1) their preliminary collection efforts were absolutely privileged under Civil Code section 47, subdivision (b); (2) a bond was required to stay collection efforts on an attorney fees judgment under Civil Code section 1717; and (3) plaintiff's abuse of process and slander of title claims were meritless as a matter of law in any event. The court sustained the demurrer based on the second contention—namely, the appeal of an attorney fees judgment did not automatically stay collection efforts—which precipitated this appeal.[3]

## II

Civil Code section 47, subdivision (b) states any "publication or broadcast" made in the course of a "judicial proceeding" is privileged. Originally enacted in 1872, this provision stems from the common law's defense to defamation actions for statements made in judicial proceedings.[4] (*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1163 [232 Cal.Rptr. 567, 728 P.2d 1202].) Since its inception, however, and particularly since the landmark decision in *Albertson v. Raboff* (1956) 46 Cal.2d 375, 381 [295 P.2d 405], which held the filing of a notice of lis pendens was privileged vis-à-vis a title disparagement claim, the litigation privilege afforded by section 47, subdivision (b) has

---

[3]The transcript of the hearing on defendants' demurrers is nothing if not amusing. After confessing he had not read the relevant cases, the judge announced he was ruling for defendants on the ground "there is no bond required." Plaintiff's counsel gently informed him that conclusion called for the opposite ruling. Following O'Keefe's counsel's rebuttal argument, the court announced it was resolute that "there is no bond required" and because O'Keefe could not plead around the bond requirement, the court was therefore dismissing the complaint without leave to amend. Plaintiff's counsel again tried to correct the court, this time somewhat less subtly:

"[Plaintiff's counsel]: Perhaps the court just misspoke. What the court just said was no bond was required. If no bond was required, then what [defendants did] is completely impermissible.

"The Court: Right. No bond was required, therefore the lien that was filed by the attorneys is not an improper action on the part of the attorneys."

Undaunted, plaintiff's counsel again attempted to explain the bond requirement of Code of Civil Procedure sections 916 and 917.1 and the judicial gloss thereon. The court then declared, "My understanding is that a bond . . . would be required" by plaintiff to stay efforts to collect the attorneys' fees judgment while it was on appeal. Defense counsel agreed with alacrity. The court then clarified: "A bond is needed and there was no bond posted. There being no bond posted, the activities [of defendants] are not actionable, in my view, and the demurrer is properly sustained. Not curable by any opportunity to amend. I apologize for any misstatement."

[4]Hence its placement in the Civil Code immediately following the provisions concerning defamation.

been expanded to bar virtually all tort actions based on any "publication or broadcast" made in the course of a judicial proceeding.[5] (*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc., supra,* at pp. 1164-1165; *Pollock v. Superior Court* (1991) 229 Cal.App.3d 26, 29 [279 Cal.Rptr. 634].)

A four-part test determines whether a particular statement falls within this litigation privilege. To be privileged a statement must (1) be made in a judicial proceeding, (2) by litigants or other authorized participants, (3) aim to achieve the litigation's objects, and (4) have some logical connection or relation to the proceeding. (*Silberg v. Anderson, supra,* 50 Cal.3d at p. 212.) Moreover, the scope of "publication or broadcast" includes noncommunicative conduct like the filing of a motion for a writ of sale (*Merlet v. Rizzo* (1998) 64 Cal.App.4th 53, 64-66 [75 Cal.Rptr.2d 83]), the filing of assessment liens (*Wilton v. Mountain Wood Homeowners Assn.* (1993) 18 Cal.App.4th 565, 568-571 [22 Cal.Rptr.2d 471]), or the filing of a mechanic's lien (*Frank Pisano & Associates v. Taggart* (1972) 29 Cal.App.3d 1, 25 [105 Cal.Rptr. 414]). The privilege also applies to conduct or publications occurring outside the courtroom (*Silberg v. Anderson, supra,* 50 Cal.3d at p. 212), to conduct or publications which are legally deficient for one reason or another (*Frank Pisano & Associates v. Taggart, supra,* 29 Cal.App.3d at p. 25), and even to malicious or fraudulent conduct or publications. (*Silberg v. Anderson, supra,* 50 Cal.3d at pp. 216-218; *Wilton v. Mountain Wood Homeowners Assn., supra,* 18 Cal.App.4th at p. 571.)

■ Under these criteria defendants' enforcement efforts are clearly privileged under Civil Code section 47, subdivision (b). The actions giving rise to plaintiff's suit—levying on a bank account and filing an abstract of judgment—were merely defendants' efforts to secure payment of the attorney fees judgment and an extension of that judicial process. That they might involve conduct outside the courtroom is immaterial under the authority cited above.

Moreover, that these actions occurred after trial (rather than before or during trial, as in the vast majority of Civ. Code, § 47 cases) is not meaningful. Numerous cases apply the privilege to pretrial conduct, some even going so far as to apply it to precomplaint activities. (See, e.g., *Aronson v. Kinsella* (1997) 58 Cal.App.4th 254, 261-268 [68 Cal.Rptr.2d 305]; *Wilton*

---

[5]Malicious prosecution is the only tort action not barred by Civil Code section 47, subdivision (b). (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212, 216 [266 Cal.Rptr. 638, 786 P.2d 365].)

*v. Mountain Wood Homeowners Assn., supra*, 18 Cal.App.4th at p. 570.) We see no meaningful distinction that might warrant treating defendants' posttrial collection activities differently.[6] We conclude defendants' actions were logically and legally related to the realization of a litigation objective—that is, collection of a judgment.

Plaintiff's effort to evade Civil Code section 47's litigation privilege fails. He suggests the abstract of judgment filed by defendant Kompa was "fraudulent," thereby somehow removing it from the operation of the privilege. Plaintiff is misguided. As noted above, *Silberg* leaves no room for doubt: For policy reasons, even an act committed fraudulently or with malice is privileged under section 47, subdivision (b). (*Silberg v. Anderson, supra*, 50 Cal.3d at pp. 216-218; see also *Wilton v. Mountain Wood Homeowners Assn., supra*, 18 Cal.App.4th at pp. 570-571 [following *Silberg* and rejecting as "meritless" plaintiff's assertion § 47, subd. (b) did not apply because defendant's "publication was intentional and malicious"]; *Profile Structures, Inc. v. Long Beach Bldg. Material Co.* (1986) 181 Cal.App.3d 437, 441 [226 Cal.Rptr. 192] ["the privilege attaches even though the publication was made with actual malice or with intent to do harm"].)[7]

The conclusion that defendants' actions were privileged (even if, as alleged, wrongful and harmful) necessarily means plaintiff has no tort remedy against them. One of the policies furthered by Civil Code section 47 is "freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (*Silberg v. Anderson, supra*, 50 Cal.3d at p. 213.) This and other "salutary policy reasons for an absolute privilege supersede individual litigants' interest in recovering damages for injurious publications made during the course of judicial proceedings." (*Id.* at p. 218.) But this does not mean plaintiff was remediless. He could have posted an undertaking or sought a writ of supersedeas to forestall defendants' allegedly

---

[6]One recent Court of Appeal decision—too recent to guide the parties in their appellate briefs—does apply Civil Code section 47's litigation privilege to posttrial conduct. Although the conduct at issue in that case (among other things, an application for a writ of sale) differs slightly from our facts, the differences are legally insignificant. (*Merlet v. Rizzo, supra*, 64 Cal.App.4th at pp. 64-66.)

[7]Moreover, the cases relied on by plaintiff for the proposition that claims for abuse of process and/or title disparagement may be stated on facts indistinguishable from ours are flatly inapposite. Those cases simply do not consider Civil Code section 47's litigation privilege. (See, e.g., *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94 [101 Cal.Rptr. 745, 496 P.2d 817]; *Coley v. Hecker* (1928) 206 Cal. 22 [272 P. 1045]; *Czap v. Credit Bureau of Santa Clara Valley* (1970) 7 Cal.App.3d 1 [86 Cal.Rptr. 417].) Since the litigation privilege was not on those courts' judicial radar screens, those cases are not relevant here.

improper collection efforts. (See, e.g., *Nielsen v. Stumbos* (1990) 226 Cal.App.3d 301, 303 [276 Cal.Rptr. 272].)[8]

Judgment affirmed.

Sills, P. J., and Bedsworth, J., concurred.

---

[8]It is not necessary to address here whether efforts to collect an attorney fees award under Civil Code section 1717 are automatically stayed pending appeal under Code of Civil Procedure sections 916 and 917.1, and we imply nothing concerning that question.